Amanda SKILLINGS and Robert Monts, Plaintiffs,

v.

The State of ILLINOIS, Ann Patla, individually and in her capacity as the Director of the State of Illinois Department of Public Aid, Judy Barr Topinka, individually and in her capacity as Treasurer of the State of Illinois, and Citibank, N.A., as escrow agent under the Cigarette Master Settlement Agreement and the Smokeless Tobacco Master Settlement Agreement, Defendants.

No. 99–2087.

United States District Court, C.D. Illinois, Danville/Urbana Division.

Nov. 17, 2000.

Joseph W. Phebus, Steven D. Wright, Phebus & Winkelmann, Urbana, IL, Nancy J. Glidden, Phebus & Winkelmann, West Chester, PA, for Plaintiff.

Karen L. McNaught, Christine A. Ryan, Office of Attorney General, Springfield, IL, for State of Illinois Defendants.

Richard T. West, Meyer Capel, P.C., Champaign, IL, for Defendant Citibank.

### ORDER

BAKER, District Judge.

In November 1998, the State of Illinois, along with forty-five other states, entered into a settlement agreement with various tobacco companies. This settlement, known as the Master Settlement Agreement ("M.S.A."), covered a wide variety of claims. As part of its recovery, the State was reimbursed for money it spent to treat its public aid recipients' tobacco-induced illnesses.

The plaintiffs are Medicaid recipients. They seek a portion of the State's recovery under the M.S.A., alleging that they are entitled to share in potential future proceeds of the settlement to the extent those proceeds exceed expenditures on their behalf. Specifically, Count I alleges that Illinois officials Ann Patla and Judy Barr Topinka violated 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1396. Count II alleges that the State of Illinois has deprived the plaintiffs of due process of law in violation of the Fifth and Fourteenth Amendments. Counts III and IV allege common law breach of contract. Finally, Count V alleges that the State violated Title XIX of the Social Security Act.

This matter is before the court on the defendants' motions to dismiss the plaintiffs' complaint (# 89 & # 97). In their motions, the defendants argue that the Eleventh Amendment bars the plaintiffs' suit, and alternatively, that the plaintiffs are not entitled to any portion of the M.S.A.'s proceeds. In response, the plaintiffs assert that a question of fact regarding the particulars of Illinois' settlement with the tobacco companies precludes dismissal of the case at this point.[1] To that end, the plaintiffs also filed a Motion for Leave to Amend Complaint Instanter to Join as Additional Defendants Herein the Tobacco Companies that Entered into the Master Tobacco Settlement Agreements (# 96).

■ The Seventh Circuit recently rejected a similar claim of entitlement to the proceeds of the M.S.A. by Wisconsin Medicaid recipients in *Floyd v. Thompson*, 227

---

1. The plaintiffs have not filed a response specifically addressing Citibank's motion to dismiss. However, Citibank's motion merely adopts the arguments of the State defendants. Accordingly, the plaintiffs' response to the State defendants' motion to dismiss serves as a response to Citibank's motion as well.

F.3d 1029 (7th Cir.2000). Under federal Medicaid law, recipients must assign to the state Medicaid administrator all claims against third parties who might be responsible for paying their medical expenses. The statute and regulations governing assignment of claims require the state to turn over to the individual Medicaid recipient any recovery from a third party that exceeds the amount expended by the state on the individual's behalf. *Floyd*, 227 F.3d at 1032 (*citing* 42 U.S.C. § 1396(k)(b); 42 C.F.R. § 433.154). The plaintiffs brought suit against Wisconsin officials alleging that under these provisions, they are entitled to a portion of the M.S.A. proceeds that exceeded Wisconsin's Medicaid expenditures on their behalf.

The Seventh Circuit affirmed the district court's dismissal of this action. In doing so, it bypassed the complex Eleventh Amendment issue and instead examined the terms of the M.S.A. in light of the statutes and regulations governing the assignment of claims. The court found that Medicaid recipients had assigned only their right to recover the amounts paid by the state Medicaid program. They had not, however, assigned their right to recover any excess damages. Thus, the M.S.A. provided no recovery for damages in excess of what belonged solely to the state. In reaching this conclusion, the court noted that the language of the M.S.A. released claims of individuals "only insofar as they are acting for the state and suing on general injuries, not insofar as they are seeking 'solely ... private or individual relief for separate and distinct injuries.' " *Floyd*, 227 F.3d at 1037 (*quoting* M.S.A. § para. II(pp)(2)(a)). Moreover, the M.S.A. distinguished between recovery that an entity of the state might receive for health-care expenses, and the type of recovery an individual might seek. The court read this distinction "to indicate that the M.S.A. . . . . itself recognized that the assignments the states received might not include all claims related to health-care expenses and that it did not purport to extinguish the claims of individual persons who were not part of the settlement process." *Floyd*, 227 F.3d at 1037.

Likewise, in this case, the plaintiffs are public aid recipients seeking a portion of the M.S.A.'s proceeds. Accordingly, this court as well may bypass the question of Eleventh Amendment immunity and examine the issue under the terms of the M.S.A. In *Floyd*, the Seventh Circuit determined that the only assigned claims settled by the M.S.A. were claims for money the states actually expended to provide medical services to recipients of public aid. Because a recipient of public aid would not be entitled to money a state has expended on his or her behalf, that recipient has no claim to any portion of the M.S.A.'s proceeds.

Nevertheless, the plaintiffs argue that the reasoning of *Floyd* does not resolve this dispute because Illinois' statutory scheme governing the assignment of public aid recipients' claims confers on the State more authority than the State of Wisconsin derives under its scheme. In so arguing, the plaintiffs correctly point out that the court did look to Wisconsin law in assessing whether the plaintiffs had a right to a portion of the M.S.A.'s proceeds. Specifically, the court discussed statutory limitations on Wisconsin's authority to recover from a third party on behalf of a public aid recipient to support its conclusion that the M.S.A. resolved only those rights belonging solely to the states. The court noted that under its statutes, Wisconsin could recover on behalf of its public aid recipients only money it actually expended for their care. That restriction on Wisconsin's authority in negotiating the M.S.A., in light of the language of the M.S.A. as to precisely which claims were released, led the Seventh Circuit to conclude the M.S.A. could not have resolved any claims belonging to Wisconsin's public aid recipients. *Floyd*, 227 F.3d at 1036. Thus, although Wisconsin's statutes provided a reference for interpreting the terms of the M.S.A., the ultimate issue was not one of Wisconsin law. Rather, the issue was whether

public aid recipients are entitled to any portion of the M.S.A., and that question turned on the terms of the M.S.A. itself. That Wisconsin was limited in its authority to resolve the claims of public aid recipients reinforced the court's interpretation of the limited scope of the released claims, but that does not mean that the terms of the M.S.A. would have different meanings in different states.

The plaintiffs also assert that the original complaints filed by Illinois and Wisconsin against the tobacco companies likely pleaded different claims. This court must consider Illinois' original claims, they argue, before determining the extent of the M.S.A.'s impact on the rights of Illinois public aid recipients. This court does not agree that this inquiry is relevant. The original complaint is not the final word on the rights of the parties to the tobacco litigation; the M.S.A. is. *See Floyd,* 227 F.3d at 1036 (noting that although "[s]ome of the states may have included assigned or subrogated claims in their initial litigation, ... [a]t this point, the only relevant document is the M.S.A. § itself ...."). Whatever the State of Illinois may have intended to resolve originally does not alter the fact that the M.S.A. ultimately resolved only those claims belonging exclusively to the states.

Finally, the court must address the plaintiffs' motion to join the tobacco companies as additional defendants. Under the Seventh Circuit's decision in *Floyd,* the M.S.A. does not extinguish individuals' potential claims against the tobacco companies. *Floyd,* 227 F.3d at 1037. Those claims, however, would be distinct from those settled by the M.S.A. Yet the plaintiffs do not allege any new claims, they merely seek to add the tobacco companies as defendants to the claims they have alleged against the State. Moreover, the plaintiffs misconstrue the issue regarding the scope of the claims settled by the M.S.A. as one of fact on which they need discovery from the tobacco companies. However, as explained above, the court in *Floyd* has already resolved that question by examining the terms of the M.S.A. itself. Thus, the court will not allow the plaintiffs to amend their complaint to add the tobacco companies.

## CONCLUSION

The court GRANTS both the State of Illinois defendants' Supplemental Motion to Dismiss Plaintiffs' Second Amended Complaint with Further Amendment (# 89), and Citibank's Motion to Dismiss Plaintiffs' Second Amended Complaint with Further Amendment (# 97). The court thereby finds the State's Motion to Dismiss Second Amended Complaint with Further Amendment (# 70), and Motion to Supplement Defendants' Motion to Dismiss (# 86) MOOT. Finally, the court DENIES the plaintiffs' Motion for Leave to Amend Complaint Instanter to Join as Additional Defendants Herein the Tobacco Companies that Entered into the Master Tobacco Settlement Agreements (# 96). This case is TERMINATED.