Cirilo B. CARDENAS, Sr., et al., Plaintiffs,

v.

Earl I. ANZAI, Attorney General, et al., Defendants.

No. CIV.00–00320DAEKSCC.

United States District Court, D. Hawai'i.

Jan. 18, 2001.

Arthur Y. Park, Laurent J. Remillard, Jr., Park Park Yu & Remillard, Honolulu, HI, Wayne D. Parsons, Honolulu, HI, Antonio Ponvert, III, Koskoff Koskoff & Bieder PC, Bridgeport, CT, for Cirilo B. Cardenas, Sr., Alejandro M. Asprer, Margaret D. Palting, Lex A. Bautista, plaintiffs.

Charles F. Fell, Office of the Attorney General–Hawaii, Honolulu, HI, for Earl I.

Anzai, Neal Miyahara, Susan M. Chandler, Citibank, N.A., defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT

DAVID ALAN EZRA, Chief Judge.

The court heard Defendants' Motion on November 27, 2000. Antonio Ponvert, III, Esq., Arthur Y. Park, Esq., Vernon Yu, Esq., and Wayne D. Parsons, Esq., appeared at the hearing on behalf of Plaintiffs; Deputy Attorney General Charles F. Fell appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendant's Motion to Dismiss Complaint.

### BACKGROUND

This case arises out of a lawsuit filed in state court on January 31, 1997, entitled *State of Hawaii v. Brown & Williamson Tobacco Corporation, et al.* In that case, the State of Hawaii sued tobacco manufacturers for smoking-related injuries suffered by the State's Medicaid recipients. The suit resulted in a settlement through a Consent Decree. The Master Settlement Agreement provides that the State will dismiss the suit in exchange for approximately 1.38 billion dollars,[1] payable over 25 years. Final judgment in that case has been entered, and the State received its first payment of $12,900,000 in January of 2000. Part of the settlement agreement is what is considered to be "excess recovery," meaning that the State will receive more money from the tobacco manufacturers than it actually paid to treat Medicaid recipients.

Plaintiffs are victims of smoking-related illnesses. In filing this suit, Plaintiffs seek declaratory and injunctive relief; they ask the court to direct the excess recovery of the future payments to the Medicaid recipients themselves rather than to the State. Plaintiffs argue that the State, as a participant in the Federal Medicaid program, must comply with Federal law, namely the Medicaid Act and its regulations, which directs the State to disburse its excess recovery to the Medicaid recipients.

Defendants Attorney General Earl I. Anzai, Director of the Department of Budget and Finance Neal Miyahara, and Director of the Department of Human Services Susan Chandler (collectively "State Defendants") filed this Motion to Dismiss Complaint on July 21, 2000, claiming that the suit is barred by the Eleventh Amendment and therefore the court lacks subject matter jurisdiction. Plaintiffs filed their Memorandum in Opposition to State Defendants' Motion to Dismiss on September 21, 2000. State Defendants filed a Reply Memorandum in Support of their Motion to Dismiss on October 6, 2000.

On October 13, 2000, Plaintiffs filed a Motion to Strike Arguments Numbered III and IV from Defendants' Reply Memorandum, claiming that the arguments were improperly made. Defendants responded with a Memorandum in Opposition to Plaintiffs' Motion to Strike Arguments Numbered III and IV from Defendants' Reply on November 13, 2000. Then, after receiving leave from the court to do so, Plaintiffs filed their Supplemental Memorandum in Opposition to Defendants' Reply Memorandum in Support of their Motion to Dismiss Complaint on November 15, 2000.[2]

---

1. Defendants, in their Motion to Dismiss, state that the Master Settlement Agreement provides for this figure of "approximately $1.38 billion." Plaintiffs contest that this figure is inaccurate. They claim instead that the exact amount to be received by the State is unknown, because the amount will be determined each year by a variety of factors, including the misconduct of the Tobacco companies. The exact amount of damages

incurred by the State each year cannot yet be known, and cannot be determined until the passing of each year.

2. The court GRANTS Plaintiffs' Motion to Strike Arguments III and IV from Plaintiffs' Reply. The court will not address these two arguments in this Order because Local Rule 7.4 provides that "[a] reply must respond only to arguments raised in the opposition. Any

*STANDARD OF REVIEW*

■ Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a complaint if the court lacks jurisdiction over the subject matter in a case. Fed.R.Civ.P. 12(b)(1). In determining the sufficiency of an alleged jurisdictional basis, the plaintiff bears the burden of proof that subject matter jurisdiction does in fact exist. *Thornhill Pub. Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). Moreover, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983).

In a motion to dismiss based upon lack of subject matter jurisdiction under Rule 12(b)(1), the court employs the same standard under which it would review a motion for dismissal for failure to state a claim under Rule 12(b)(6). *Bollard v. California Province of the Society of Jesus*, 196 F.3d 940, 945 (9th Cir.1999) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998)). At this stage in the proceedings, the court must take the allegations in Plaintiffs' complaint as true. *Id.* (citing *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1099 (9th Cir.1999)).

*DISCUSSION*

State Defendants argue that the court should dismiss this case on the grounds that the court lacks subject matter jurisdiction because the Eleventh Amendment bars the suit. They assert that even though the Complaint is framed in terms of prospective injunctive and declaratory relief, the court should dismiss the suit because, in reality, Plaintiffs seek monetary damages which will retrospectively

damage the State Treasury. The court finds merit in this argument.

The Eleventh Amendment to the United States Constitution states that

[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., amend. XI. This Amendment has been read invariably through the years to stand for the notion that each state is a sovereign power within the federal system; the inherent nature of sovereignty is such that a state may not be amenable to suit without that state's consent. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The United States Supreme Court has consistently reaffirmed that "federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States." *Id.* (citations omitted). Therefore, a State is immune from suit by an individual. *Id.*

■ There are exceptions to the sovereign immunity doctrine of the Eleventh Amendment. First, a state can expressly consent to suit. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Micomonaco v. State of Washington*, 45 F.3d 316, 319 (9th Cir.1995). If it does, it can be sued in federal court. Second, where a state's statutes or constitution so provide, a state will be deemed to have waived its sovereign immunity. *Id.* Third, Congress can expressly abrogates the states' sovereign immunity pursuant to a valid exercise of power. *Seminole Tribe*, 517 U.S. at 55, 116 S.Ct. 1114.

arguments raised for the first time in the reply shall be disregarded." In accordance with this rule, the court disregarded Plaintiffs' arguments numbered III and IV in its reply. Therefore, the court will not address Plain-

tiffs' Supplemental Memorandum in Opposition to Defendants' Reply Memorandum in Support of their Motion to Dismiss Complaint.

■ Finally, and most relevant here, a plaintiff may seek prospective injunctive relief from a state, if necessary to conform its conduct with Federal statutes or the constitution, even if it has an ancillary effect on the state treasury. *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This is true when the relief is sought in the form of a declaratory judgment, *id.,* or through an injunction forcing a state officer to conform his conduct with the law and to prevent interference with federal rights. *Papasan v. Allain,* 478 U.S. 265, 277, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (stating that injunction exception only applies where "underlying authorization upon which the named official acts is asserted to be illegal"); *Ex Parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Armstrong v. Wilson,* 124 F.3d 1019, 1025 (9th Cir.1997). Therefore, the Eleventh Amendment does not preclude suit against a state official for "prospective relief for an ongoing violation of federal law." *Children's Hospital and Health Center v. Belshe,* 188 F.3d 1090, 1095 (9th Cir.1999).

The first question before the court, then, is whether, if taking the allegations in Plaintiffs' Complaint as true, the actions of the state officials in this suit constitute ongoing violations of federal law. Plaintiffs assert that the State Defendants will violate federal law if they actively decide to keep the excess recovery funds from the

settlement for the State rather than distributing them to Plaintiffs. This allegation amounts to the assertion of an ongoing violation of federal law and, if true, is the proper type of violation for which an injunction may issue pursuant to *Young* and its progeny. *See, e.g. Papasan,* 478 U.S. at 281–82, 106 S.Ct. 2932 (stating that allegation in complaint sufficiently stated ongoing constitutional violation to warrant potential injunctive relief; therefore complaint was not barred by Eleventh Amendment).

■ The remaining issue before the court, then, is extremely complex. The court must determine whether the relief sought is "prospective." To so determine, the court must ascertain whether the State now owns the money and it is de facto contained in the State treasury. To state the issue another way, the court must decide whether the Master Settlement Agreement immediately vested in the State the right to an ascertainable amount of money so that an injunction would actually deprive the state treasury of money.[3]

State Defendants argue that the relief is retrospective because they have entitlement to the money. The money is, Defendants argue, already obligated to the State and therefore any judgment Plaintiffs seek will operate to attach the state treasury.[4]

Plaintiffs, on the other hand, assert that the money does not yet belong to the

---

**3.** Among other reasons, this issue is convoluted because to find that this suit is barred by the Eleventh Amendment effectively means that Plaintiffs have no redress against the State for violations of the Medicaid Act. If the State in fact keeps the excess recovery of the settlement from Medicaid citizens, it is doing so in violation of the Medicaid Act and the condition imposed upon it by Congress as a prerequisite for receipt of federal funding. It is well settled that when Congress enacts legislation under its Spending Power, it may condition the grant of money to the states. States accepting federal money, therefore, must respect the terms and conditions of the grant in order to receive the money. *See South Dakota v. Dole,* 483 U.S. 203, 206, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987); *State of California v. United States,* 104 F.3d 1086,

1092 (9th Cir.1997). To prevent Plaintiffs from seeking redress also prevents halting the State's disregard for a Congressional condition.

**4.** Defendants also argue that the court should trust the State officials to abide by the law; they assert that no threat of imminent harm exists which would warrant an injunction. Plaintiffs counter by arguing that there is a documented history of the state's failure to comply with the Medicaid Act, and a promise to continue doing so. The court understands that the state intends to follow the law as it interprets it, but the court also notes that none of the first payment from the settlement was disbursed.

State. They use the following arguments to support their assertion: first, the exact amount to be received by the State is unknown, because the amount is to be determined based on the misconduct of the Tobacco companies during each year; second, that the money will actually be owned by the Tobacco companies until the time it is paid to the State per the M.S.A. § and the escrow agents in charge of the payments; and third, that the Master Settlement Agreement itself characterizes the payments as future. The court finds that despite these allegations, the Master Settlement Agreement reveals a slightly different nature.[5]

Plaintiffs first assert that the exact amount of money to be received by the State each year is unknown. This, they argue, indicates that a right to the money has not yet vested with the State, so the relief sought is prospective. The Master Settlement Agreement provides, in pertinent part, that

> each [Tobacco Manufacturer] shall severally pay to the Escrow Agent (to be credited to the [aforementioned] Account) its Relative Market Share of the base amounts specified below, as such payments are modified in accordance with this subsection.

MSA at 56. The M.S.A. § then lists base amounts of money to be paid per year to the states over the next 18 years. It provides that the base amounts should be adjusted according to: an inflation adjustment, a volume adjustment, a previously settled states reduction, a non-settling states reduction, the NPM adjustment, the offset for miscalculations or disputed payments, the Federal Tobacco Legislation offset, the Litigation Releasing Parties offset, and the offset for claims over those described in another section of the Master Settlement Agreement. MSA at 57.

The lack of a designated precise amount does not mean that the State does not have vested rights in the money. To the contrary; the Master Settlement Agreement by its very existence ensures that each state is entitled to money each year. The entitlement stems from a settlement of a lawsuit. That the amount will vary depending on outside influences does not change this entitlement.

Plaintiffs also assert that because the money will be owned by the Tobacco Manufacturers until its yearly distribution to each state, it does not truly belong to the state and therefore the relief sought is prospective. This argument does not convince the court. Someone must own the money before it is transferred to the State; the fact that it is the original owner does not diminish the vested right of the State to receive money from the Master Settlement Agreement. If, for example, someone won the lottery and was to receive the proceeds over a period of years, she would be entitled to receive those proceeds regardless that the State actually owned the money until the year it paid the winner. This is true because the right to those proceeds vested at the time she won the lottery.

It is irrelevant who actually owns the money until it is paid out; the issue is rather whether the state is entitled to receive it or not. The court believes that it is so entitled.

Finally, Plaintiffs argue that the Master Settlement Agreement itself characterizes the payments as future. The court finds this argument unpersuasive.

The Master Settlement Agreement states:

> all payments ... pursuant to this Agreement are in settlement of all the Settling States' ... claims for monetary, restitutionary, equitable, and injunctive relief alleged by the Settling States with re-

**5.** The court studied the Master Settlement Agreement in deciding this Motion. It can properly do so without converting the Motion into one for summary judgment because Plaintiffs referred to the Master Settlement Agreement in the Complaint. *See Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir.1994).

spect to the year of payment or earlier years ....

MSA at 131. The payments are to be made in the future, but they are in settlement of past claims. The fact that the money will be received in the future does not diminish the fact that the State already has a vested right in the money. The characterization of "future payments" is not dispositive because the question is rather whether the entitlement is future or present. The court concludes it is present.

This precise issue has been addressed, and dismissed, by at least two other District Courts. *See, e.g., Barton v. Summers,* 111 F.Supp.2d 989 (M.D.Tenn.2000); *Floyd v. Thompson,* 111 F.Supp.2d 1097 (W.D.Wis.1999). Those courts discussed the same Master Settlement Agreement as the one now before this court. This court finds those holdings and the reasoning behind them persuasive.

In the original case to tackle this question, *Floyd v. Thompson,* the District Court in the Western District of Wisconsin faced the same facts as this court now faces. Plaintiffs were a class of Wisconsin residents who received treatments for smoking-related illnesses under Wisconsin's Medical Assistance Program (WASP). WASP is a cooperative federal state program generated under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v. *Floyd,* 111 F.Supp.2d at 1099.

The plaintiffs in *Floyd* sought the same relief as Plaintiffs do here. They sought injunctive and declaratory relief to prevent the state defendants from failing to disburse to the plaintiffs the portion of the settlement agreement which exceeded the state's Medicaid expenses. *Id.* The defendants moved to dismiss the case on the

grounds that the Eleventh Amendment barred the suit. *Id.*

In granting defendants' motion to dismiss, the court declared that the State was the real party in interest because plaintiffs sought money ultimately intended for the state treasury. *Id.* at 1100. The court determined that the fact that the State was to receive payment for the settlement in the future did not mean it was prospective relief. *Id.* at 1101. It further stated that to allow plaintiffs to recover funds from the settlement would be tantamount to granting retrospective monetary damages paid from the state treasury, because "the amount, obligation and ownership of the funds was fixed when the Master Settlement Agreement was signed, rather than upon the receipt of the funds." [6] *Id. See also Barton v. Summers,* 111 F.Supp.2d 989, 992 (M.D.Tenn.2000) (granting motion to dismiss on Eleventh Amendment grounds, reasoning that tobacco companies have already agreed to pay the state for past violations of the law and citing *Floyd;* stating that to find otherwise would "put form over substance and constitute exquisite sophistry").

Here, Plaintiffs argue to the court that they do not seek money damages; rather that they seek to enjoin State officials from the act of deciding not to pay the excess recovery to the Medicaid patients. The court notes that Plaintiffs' efforts in so arguing have been valiant, and that its decision was not easy. But to enjoin State officials would be tantamount to telling the State how to disburse funds that it has been granted through the Master Settlement Agreement. This action is precisely the action that the Eleventh Amendment bars. Although Plaintiffs make strong arguments and the court is sympathetic to the plight of Plaintiffs,[7] the court is bound

---

**6.** The Seventh Circuit affirmed the decision of the district court in *Floyd v. Thompson,* 227 F.3d 1029 (7th Cir.2000), but did not do so on Eleventh Amendment grounds. The court declined to decide the case per the eleventh amendment because it found it "unnecessary to delve into the complexities of that area of

the law." *Id.* at 1031. Its only comment regarding the district court's decision was "[w]hile we think it possible that the district court's Eleventh Amendment analysis was correct, the answer is not obvious." *Id.*

**7.** The court recognizes that this decision leaves Plaintiffs with no relief from what may

by not only the United States Constitution, but the decisions of the United States Supreme Court and Ninth Circuit Court of Appeals.[8]

## CONCLUSION

For the reasons stated above, the court GRANTS State Defendants' Motion to Dismiss Complaint.

IT IS SO ORDERED.

be a violation of Federal law. This result, though slightly draconian, is not unique in Federal case law. *See, e.g. College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (effectively foreclosing petitioner's remedy based on finding that Trademark Remedy Clarification Act did not abrogate Florida's sovereign immunity); *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (effectively foreclosing remedy against state based on finding that sovereign immunity barred suit against state in state court as well as federal).

8. The court also has not lost hope that the State will comply with Federal law of its own accord. Failure of the state to do so could result in federal legislation to strengthen requirements for state participation in federal medicaid programs in the future.