Judith CLARK, John C. Puleo, Tammy Thomas, and All Others Similarly Situated, Their Next of Kin, Heirs, or Personal Representatives, Plaintiffs,

v.

Attorney General Carla STOVALL, Secretary of Kansas Department of Social and Rehabilitation Services Janet Schalansky, and Citibank, N.A., Defendants.

No. 00–4054–SAC.

United States District Court, D. Kansas.

March 2, 2001.

Richard A. Bieder, Antonio Ponvert, III, Koskoff, Koskoff & Bieder, P.C., Bridgeport, CT, Stephen W. Cavanaugh, Harold A. Houck, Thomas G. Lemon, Todd D. Powell, Fisher, Cavanaugh, Smith & Lemon, P.A., Topeka, KS, Michael L. Hodges, Lenexa, KS, for Plaintiffs.

John M. Cassidy, Office of Attorney General, Topeka, KS, Gregory B. Hancks, Kutak Rock LLP, Kansas City, MO, Robert M. Slovek, Kutak Rock LLP, Omaha, NE, for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the motion to dismiss (Dk. 25) filed by the defendants Kansas Attorney General Carla Stovall ("Attorney General") and Secretary of Kansas Department of Social and Rehabilitation Services Janet Schalansky ("S.R.S. Secretary") (jointly referred to as the "state defendants") and the motion to dismiss (Dk. 42) filed by the defendant Citibank, N.A. The plaintiffs move for oral argument on these motions. (Dk.45). Considering the parties' detailed briefs and the recent number of judicial decisions on these same issues, the court believes oral argument is unnecessary and would not materially contribute to this proceeding. The court denies the motion for oral argument.

**BACKGROUND**

In November of 1998, the State of Kansas along with over forty other states entered into a Master Settlement Agreement ("M.S.A.") that was valued in excess of $200 billion and that settled the states' claims against major tobacco companies. Another court recently described the M.S.A. in these terms:

> The M.S.A., in part, compensates the states for past and future medical expenses occasioned by state underwritten treatment of tobacco-related illnesses. Payments under the M.S.A. will be made to the states over two and one-half decades. The M.S.A. does not resolve and release claims for "private or indi-

vidual relief for separate and distinct injuries ... or ... recovery of health-care expenses" by individuals. (M.S.A. at II(pp)(2)(A) & (B)).

*Strawser v. Lawton,* 126 F.Supp.2d 994 (S.D.W.Va.2001). As alleged in the amended complaint, Kansas expects to receive approximately $1.767 billion from the settlement which will be paid out in installments over the next twenty-five years.[1] (Dk.15, ¶ 8). Kansas received its first payment in December of 1999, and it totaled $20,583,592.26. *Id.*

The plaintiffs are Kansas residents who suffer from smoking-related illnesses and who have received medical assistance benefits from the Kansas Medicaid program for the care and treatment of these illnesses. The plaintiffs seek to certify a class and obtain a declaratory judgment that the State of Kansas must comply with federal Medicaid laws and "seek reimbursement of the medical assistance payments made through the state Medicaid program from known legally liable third parties such as those tobacco companies already identified by the state" and then distribute the recovery consistent with the federal Medicaid Act which requires any amount in excess of that needed to reimburse the state and federal programs to be distributed to the individual Medicaid recipients. They also seek an order enjoining the defendants to disburse or to cause disbursement to the plaintiffs the portion of the tobacco litigation settlement proceeds that belongs to the plaintiffs before placing those proceeds in the state treasury or otherwise giving the state possession or control of those proceeds. They seek other injunctive relief related to recovering their property interest in rights assigned to the state under the Medicaid Act, to obtaining due process with respect to those property interests previously taken or to be taken in the future, to segregating the settlement payments from the state treasury and obtaining an accounting and disbursement of them in accordance with the Medicaid Act, to retaining the settlement proceeds and notifying plaintiffs of the procedure for obtaining their share of them, and to seeking reimbursement of medical assistance payments from tobacco companies and other known legally liable third parties according to the requirements of the Medicaid Act.[2]

Sued in their official capacities, the Attorney General and S.R.S. Secretary seek

---

1. The Seventh Circuit recently explained that the payments under the M.S.A. are subject to adjustment and are not tied to any particular claims:

 "As Wisconsin and the other states point out, the total sums of money to be paid under the M.S.A. are not earmarked for different claims. Some of it is to go to educational programs; some of it to research; some to reimbursement of the state's expenses in treating sick people and in supporting families whose wage-earners are disabled from smoking; some is frankly punitive. The final amount to be paid, after 25 years have elapsed, is unknown and unknowable at this point, because it depends partly on how successful the anti-smoking campaigns turn out to be."

 *Floyd v. Thompson,* 227 F.3d 1029, 1038 (7th Cir.2000).

2. In analyzing the Eleventh Amendment issues, the court will focus on the plaintiffs' claim for injunctive relief and will not discuss separately the other claims for relief. This approach is in keeping with Tenth Circuit precedent:

 "[N]either notice nor declaratory relief is the 'type of remedy designed to prevent ongoing violations of federal law.'" *See Green* [*v. Mansour* ], 474 U.S. [64] at 70–74 [106 S.Ct. 423, 88 L.Ed.2d 371 (1986)]. Thus, the Eleventh Amendment bars a federal court from ordering notice relief in a suit against the state, unless it is ancillary to a judgment awarding prospective injunctive relief. *Id.*

 *Johns v. Stewart,* 57 F.3d 1544, 1553 (10th Cir.1995).

dismissal arguing principally: state sovereign immunity, plaintiffs' failure to state a claim for relief, court's lack of subject matter jurisdiction, and plaintiffs' lack of standing. Sued in its capacity as the escrow agent for the state's settlement funds, Citibank seeks dismissal arguing plaintiff's failure to state a claim for relief. The court joins the growing number of courts to recognize the state's sovereign immunity in such litigation.

## FEDERAL MEDICAID PROGRAM

Established in Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v, and designed to finance health care services for the indigent, Medicaid is a cooperative federal-state venture administered by appropriate state agencies. *Floyd v. Thompson*, 227 F.3d 1029, 1031 (7th Cir. 2000). "Kansas has elected to participate in the Medicaid program established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396u". *Kansas Health Care Association, Inc. v. Kansas Dept. of Social and Rehabilitation Services*, 958 F.2d 1018, 1019 (10th Cir.1992). As a voluntary participant in this program, Kansas "must comply with federal Medicaid laws and regulations." *Id.* at 1020 (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)). To participate and receive federal funding, a state must submit and have approved its comprehensive plan for medical assistance.

The Medicaid Act requires a state plan to "provide ... that the State ... agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the plan." 42 U.S.C. § 1396a(a)(25)(A). The state plan must also provide:

> (B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability....

42 U.S.C. § 1396a(a)(25)(B). To assist in recovering payments for medical support and care owed to those who have received Medicaid assistance, a state plan also must:

> (1) must provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required—
>
> (A) to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party;....

42 U.S.C. § 1396k(a).

The Medicaid Act regulates the "distribution of any recovery from a third party in a manner that parallels the usual subrogation rules." *Floyd v. Thompson*, 227 F.3d at 1032. The Act provides:

> Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such

amount collected shall be paid to such individual.

42 U.S.C. § 1396k(b). A supporting regulation offers more explanation:

> The state agency must distribute collections as follows—
>
> (a) To itself, an amount equal to State Medicaid expenditures for the individual on whose right the collection was based.
>
> (b) To the Federal Government, the Federal share of the State Medicaid expenditures, minus any incentive payment made in accordance with § 433.153.
>
> (c) To the recipient, any remaining amount. This amount must be treated as income or resources under Part 435 or Part 436 of this subchapter as appropriate.

42 C.F.R. § 433.154.

In reliance on these Medicaid Act provisions, the plaintiffs claim that the State of Kansas' suit against the tobacco companies was a Medicaid reimbursement action and that the distribution requirements found in § 1396k(b) and explained in 42 C.F.R. § 433.154 entitle them to some portion of the settlement proceeds being paid in annual installments pursuant to the M.S.A. Broken down into its inferential parts, the plaintiffs' claim is that:

> (1) the tobacco companies are third parties liable to Medicaid recipients injured by cigarettes; (2) the recipients assigned their claims to the State; (3) the State's suit against the tobacco companies was a Medicaid reimbursement action pursuant to subsection 1396k(b); (4) there is a "remainder" from the settlement with the tobacco companies under subsection 1396k(b); and (5) [Kansas] ... has a mandatory obligation to pay over the remainder to Medicaid recipients injured by tobacco products.

*Strawser v. Lawton,* 126 F.Supp.2d 994. The plaintiffs primarily base their allegation of the prior suit being a Medicaid reimbursement action upon the statutory assignment of their third-party claims as well as the State of Kansas' petition that sought " 'compensation ... for past and future damages, including but not limited to health care expenditures, caused by defendant's actions in violation of the laws of the State of Kansas' and for 'restitution for the smoking-related health care costs paid by the state through its various statutory medical programs, including the programs established pursuant to K.S.A. 39–701, *et seq.*' " (Dk.15, ¶ 49). The plaintiffs now seek to enforce the Medicaid Act's requirements for the distribution of these proceeds.

## ELEVENTH AMENDMENT IMMUNITY [3]

■ The state defendants argue that the plaintiffs' suit is barred by the Eleventh Amendment in that the relief sought is the practical equivalent of monetary damages paid from the state treasury. "The state's interest in the settlement proceeds is not a mere expectancy, rather the state has already earned the moneys by

---

**3.** The state defendants assert the *Rooker–Feldman* doctrine bars this court from entertaining this suit. Because a *Rooker–Feldman* challenge goes to jurisdiction, it is the court's "first duty" to decide whether it has "jurisdiction to entertain and decide a case on its merits." *Thompson v. United States,* 291 F.2d 67, 68 (10th Cir.1961); *see Snodderly v. Kansas,* 79 F.Supp.2d 1241, 1247 (D.Kan.1999). The defendants' use of this doctrine is flawed in that the plaintiffs were not parties to the underlying state litigation. The *Rooker–Feldman* doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). The *Rooker–Feldman* doctrine should not be applied against non-parties. *Johnson v. Rodrigues,* 226 F.3d 1103, 1109 (10th Cir.2000).

virtue of the state court's final judgment and has structured receipt of the payments over time." (Dk.25, p. 12). Relying on the doctrine from *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the plaintiffs insist their action sidesteps the immunity issue by suing state officials for prospective equitable relief to prevent a continuing violation of federal law.

 "Eleventh Amendment immunity bars damages actions against a state in federal court." *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir.2000) (citations omitted). "[O]nce effectively asserted such immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Fent v. Oklahoma Water Resources Board*, 235 F.3d 553, 558 (10th Cir.2000). Of the three-judicially created methods for circumventing this immunity, the one advanced here is the *Ex parte Young* doctrine. Though the state is generally the real party in interest when a state official is sued for acting in his official capacity, this doctrine creates a narrow exception when the suit seeks prospective injunctive relief for ongoing violations of federal law. *Elephant Butte Irr. Dist. of New Mexico v. Department of Interior*, 160 F.3d 602, 607–08 (10th Cir.1998), *cert. denied*, 526 U.S. 1019, 119 S.Ct. 1255, 143 L.Ed.2d 352 (1999). The *Ex parte Young* doctrine "enables federal courts 'to vindicate federal rights and hold state officials responsible to "the supreme authority of the United States." '" *Buchwald v. University of New Mexico School of Medicine*, 159 F.3d 487, 495 (10th Cir.1998) (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 105, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting in turn *Ex parte Young*, 209 U.S. at 160, 28 S.Ct. 441)). This narrow exception requires that there "be an ongoing violation of federal law" and that it apply "only to prospective relief" and not "to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Buchwald*, 159 F.3d at 495

(quotations omitted). "For years, the Supreme Court has applied *Ex parte Young* to allow suits for prospective relief against a state officer to enjoin future violations of federal law, but it has consistently prohibited any retroactive or compensatory relief." *Elephant Butte*, 160 F.3d at 608.

*Ongoing Violation of Federal Law*

 "Because the states cannot authorize any act that violates federal law, the Supreme Court has established that an action seeking to prospectively enjoin a state official's ongoing violation of federal law is not barred by the Eleventh Amendment." *Elephant Butte*, 160 F.3d at 609 (citation omitted). The parties' briefing largely ignores this requirement of the *Ex parte Young* doctrine. The state defendants, however, do argue they are acting pursuant to state law and lack the authority to alter or ignore Kansas statutes governing the treatment of the tobacco settlement proceeds. "Even though the state officials claim to act under the authority of valid state law, if their conduct is not in accord with federal law the state cannot cloak their actions with state authority or state immunity." *Id.* (citation omitted). The general rule, however, remains that "if the state officials' conduct was authorized by state law, and no federal rights were infringed, then the alleged violation of Plaintiffs' rights is merely tortious interference with property rights, and the Eleventh Amendment bars federal jurisdiction." *Elephant Butte*, 160 F.3d at 610 (citation omitted).

 It is for the court to decide whether the plaintiffs "state a non-frivolous, substantial claim for relief against the state officials that does not merely allege a violation of federal law solely for the purpose of obtaining jurisdiction." *Elephant Butte*, 160 F.3d at 610 (quotation omitted). To date, at least four courts have rejected

other Medicaid recipients' similar claims of entitlement to M.S.A. proceeds after finding no violation of federal law, ongoing or not. *Floyd v. Thompson,* 227 F.3d 1029 (7th Cir.2000); *Tyler v. Douglas,* 2000 WL 1146575 (D.Vt. June 21, 2000); *Skillings v. Illinois,* 121 F.Supp.2d 1235 (C.D.Ill.2000); *Strawser v. Lawton,* 126 F.Supp.2d 994 (S.D.W.Va.2001).

Bypassing the "complex" Eleventh Amendment analysis, the Seventh Circuit considered whether the scope of the M.S.A. provided the plaintiffs with any possible suit for a Medicaid violation. *Floyd v. Thompson,* 227 F.3d at 1035. The circuit panel keyed on the M.S.A. language that released claims of individuals "only insofar as they are suing on general injuries, not insofar as they are seeking 'solely ... private or individual relief for separate and distinct injuries.'" 227 F.3d at 1037 (quoting M.S.A. ¶ II(pp)(2)(A)). The court concluded:

> We read this to indicate that the M.S.A. itself recognized that the assignments the states received might not include all claims related to health-care expenses and that it did not purport to extinguish the claims of individual persons who were not part of the settlement process (a move that would have been problematic at best). . . .
>
> The Floyd plaintiffs recognize that they have no right to the monies actually expended by the state for the provision of medical services to recipients of assistance. The subrogation right of § 49.89(2) makes that clear, as does the allocation scheme of 42 C.F.R. § 433.154. Since those are the only claims for medical treatment that Wisconsin settled, or perhaps even could settle given the restrictive scope the Wisconsin Supreme Court has now given to the assignment provision of § 49.45(19)(a)2, it follows that there is nothing in the M.S.A. to which the plaintiffs may assert a claim.

227 F.3d at 1037. Put another way, the allocation scheme set forth in 42 U.S.C. § 1396k(b) and explained in 42 C.F.R. § 433.154 is not violated, because the only assigned claims settled by the M.S.A. were for monies that the state actually expended to provide medical services to recipients and the federal law gives the plaintiffs as Medicaid recipients no rights or claims to those monies. While the Seventh Circuit did look at Wisconsin's law on a Medicaid recipient's limited assignment of rights, the court focused on the M.S.A. and the care taken in that document "to limit the *parties* releasing claims to the Settling States and their various subdivisions and constituent institutions." 227 F.3d at 1037. "That Wisconsin was limited in its authority to resolve the claims of public aid recipients reinforced the court's interpretation of the limited scope of the released claims, but that does not mean that the terms of the M.S.A. would have different meanings in different states." *Skillings v. Illinois,* 121 F.Supp.2d 1235, 1238 (C.D.Ill. 2000) (Following *Thompson,* the court held that "[w]hatever the State of Illinois may have intended to resolve originally does not alter the fact that the M.S.A. ultimately resolved only those claims belonging exclusively to the states").

Not unlike *Thompson* or *Skillings,* the federal district court in Vermont construed the M.S.A. to involvement payments "cover[ing] a variety of actual or non-medical damages accrued by the State" but not "separable, excess recovery which Congress contemplated as payable to an individual under the Medicaid Act." *Tyler v. Douglas,* 2000 WL 1146575 (D.Vt. June 21, 2000). For that matter, the M.S.A. by its terms does not resolve the tobacco companies' legal liability as a third-party for any Medicaid recipient's injuries. *Id.* (citing M.S.A. at § XVIII(e) ("This Agreement is not intended to be and shall not in any event be construed or deemed to be ... an

admission or concession or evidence of (1) any liability or any wrongdoing whatsoever on the part of any Released Party. . . .")); 42 U.S.C. § 1396a(a)(25) (a finding of a third party's "legal liability" triggers the recipient-reimbursement obligations). Besides the M.S.A., the court in *Tyler*, as did the court in *Strawser*, interpreted the 1999 amendments to the Medicaid Act as excepting states that participated in the M.S.A. from the normal distribution requirements and giving those states exclusive control over the settlement proceeds:

The new statute provides:

(i) Subparagraph (A) [dealing with the federal pro rata share of net recoveries by a state plan to which the United States is equitably entitled] and paragraph (2)(B) [dealing with treatment of reimbursements by liable third parties to the State for injured recipient expenditures] shall not apply to any amount recovered or paid to a State as part of the comprehensive settlement of November 1998 between manufacturers of tobacco products, . . ., and State Attorneys General, or as part of any individual State settlement or judgment reached in litigation initiated or pursued by a State against one or more such manufacturers.

(ii) Except as provided .in subsection (i)(19) [providing for state payment of litigation costs and expenses of pursuing the tobacco litigation], a State may use amounts recovered or paid to the State as part of a comprehensive or individual settlement, or a judgment, described in clause (i) for any expenditures determined appropriate by the State. 42 U.S.C. § 1396b(d)(3)(B)(i) and (ii). . . .

. . . .

In the Court's view, the statute is an unambiguous Congressional mandate vesting in the participating states a complete right, title, and interest to the settlement proceeds, excepting only litigation expenses. Hence, there is no ongoing violation of federal law, and *Ex parte Young* is inapplicable.

*Strawser*, 126 F.Supp.2d 994, *see Tyler*, 2000 WL 1146575, at *2 ("[I]n light of the plaintiff's failure to allege a violation of federal law which arises from Vermont's participation in the tobacco settlement, this complaint is barred by the Eleventh Amendment.").

The cogent reasoning employed by these other courts in finding no violation of federal law is persuasive here. The Medicaid Act plainly gives the plaintiffs no right to monies that .the state actually expended on them for medical assistance. The M.S.A. does not purport to settle any other claims for medical treatment or assistance, particularly those individually assigned by recipients to the State of Kansas. Consequently, the plaintiffs are unable to assert any violation of federal law from the state's failure to share the settlement proceeds with them. The state's reimbursement obligations under its plan are not triggered until a legal liability is found, and the M.S.A. here does not establish the tobacco companies' legal liability for any Medicaid recipient's injuries. Finally, because the 1999 Medicaid amendments specifically addressed the M.S.A. and gave the states exclusive control over the tobacco settlement proceeds, the plaintiffs cannot reasonably assert a Medicaid Act violation. In sum, these conclusions rule out any substantial claim that the state defendants are committing an ongoing violation of federal law by not sharing or distributing settlement proceeds with the plaintiffs.[4]

---

4. The court recognizes that the plaintiffs' amended complaint includes the conclusory allegation that the state's failure to sue on their behalf is an ongoing violation of federal law. The plaintiffs, however, do not devote

any arguments in their briefs to this allegation nor cite any authority for such a federal claim. Frankly, the court is at a loss to see any legal or factual bases in the plaintiffs' amended complaint for such an action. For

The plaintiffs' claim is insufficient to sustain federal jurisdiction.

*Prospective Relief*

 To date, most courts addressing these same claims and issues have relied on this prong principally or, at least, alternatively in dismissing the state defendants on Eleventh Amendment grounds. *See, e.g., Cardenas v. Anzai,* 128 F.Supp.2d 704 (D.Haw.2001) (principal ground); *Strawser v. Lawton,* 126 F.Supp.2d 994 (S.D.W.Va. 2001) (alternative ground); *Martin v. New Mexico,* 197 F.R.D. 694, 696 (D.N.M.2000) (principal ground); *McClendon v. Georgia Dept. of Community Health,* No. 00–CV– 0026 (N.D.Ga. Aug. 28, 2000) (alternative ground); *Barton v. Summers,* 111 F.Supp.2d 989, 991–92 (M.D.Tenn.2000); *Harris v. Owens,* No. 99–S–953 (D.Colo. Jan. 19, 2000) (Magistrate Judge's Report and Recommendation adopted July 19, 2000) (alternative ground); *Floyd v. Thompson,* 111 F.Supp.2d 1097 (W.D.Wis. 1999) (principal ground), *aff'd on other grounds,* 227 F.3d 1029 (7th Cir.2000). As was done in those decisions, this court rejects the plaintiffs' efforts to paint the horse a different color.

The states and the tobacco companies settled their litigation and fixed the obligations and rights of each in the M.S.A. *Martin,* 197 F.R.D. at 696 ("it is irrelevant that the money has not yet been deposited in the state treasury"). Unlike the claim in *Elephant Butte Irrigation Dist. of New Mexico v. Department of Interior,* 160 F.3d 602, 611 (10th Cir.1998), which requested relief that affected only "the state's right to future revenues" and barred the state from retaining profits, if any, to be earned in the future, the M.S.A. ensures and entitles a state to receive money each year as a result of settling a lawsuit over alleged past violations of law. *See Barton v. Summers,* 111 F.Supp.2d at 992. It is true that the amount of payments will depend on outside factors or subsequent adjustments, that the tobacco companies have legal title to the escrowed funds, and that the installment payments are to be made in the future. As the other courts have observed, however, these circumstances do not change what are the irrefutable facts making the relief here retroactive, rather than prospective. Namely, the payments are being made in settlement of past claims, the mode of payments is installment as opposed to a lump sum settlement, the amount of installment payments is computed from terms fixed by the M.S.A., and the states have a "vested right" or "equitable title" [5] to the escrowed funds. *Cardenas v. Anzai,* 128 F.Supp.2d at 707–09; *Strawser v. Lawton,* 126 F.Supp.2d at 1002 n. 6; *Barton v. Summers,* 111 F.Supp.2d at 992–93; *Floyd v. Thompson,* 111 F.Supp.2d at 1100–01.

Though the plaintiffs couch their claims in terms of injunctive and declaratory relief, "the reality is that plaintiffs are demanding a portion of the tobacco settlement, a claim for money damages." *Floyd v. Thompson,* 111 F.Supp.2d at 1101. "[T]o enjoin State officials would be tantamount to telling the State how to disburse funds that it has been granted through the

---

that matter, the M.S.A. does not establish any legal liability on behalf of the tobacco companies as to require the state to seek reimbursement. 42 U.S.C. § 1396a(a)(25)(B).

**5.** The court in *Strawser* further observed:
"From a more practical standpoint, Plaintiffs' proposed result would open a gaping hole in the public fisc. It would permit, by analogy, any seeker of state funds to look for accounts receivable of the State and then attempt to garnish them before their purely ministerial transmission to the treasury. Such a mechanism should not be engrafted onto our system of dual sovereignty."
126 F.Supp.2d at 1002 n. 6.

Master Settlement Agreement." *Cardenas v. Anzai*, 128 F.Supp.2d at 709. The precedent of this circuit supports the conclusion that the Eleventh Amendment bars precisely this kind of suit. *See V–1 Oil Co. v. Utah State Dept. of Public Safety*, 131 F.3d 1415, 1422 (10th Cir.1997) (Eleventh Amendment bars claims for "retroactive monetary reimbursement for licensure and certification fees" and for declaratory judgment that state officials had violated federal law in the past); *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir.1995) ("A suit for retroactive monetary reimbursement of withheld assistance benefits brought against a state official in his official capacity is a suit against the state because the funds to satisfy the award 'must inevitably come from the general revenues' of the state." (quoting *Edelman v. Jordan*, 415 U.S. 651, 665, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974))). The plaintiffs seek relief that retroactively divests some portion of the state's entitlement, right or title to settlement proceeds under the M.S.A. Even if characterized as equitable in nature, such relief has more than an ancillary effect on the state treasury and "is the practical equivalent of money damages." *ANR Pipeline v. Lafaver*, 150 F.3d 1178, 1189 (10th Cir.1998), *cert. denied*, 525 U.S. 1122, 119 S.Ct. 904, 142 L.Ed.2d 902 (1999); *see Harris v. Owens*, No. 99–S–953, slip op. at 9 (D.Colo. July 19, 2000). In sum, the court finds that the plaintiffs' claims satisfy neither prong of the *Ex parte Young* exception. The court grants the state defendants' motion to dismiss on Eleventh Amendment immunity grounds.

**DEFENDANT CITIBANK'S MOTION TO DISMISS**

 Sued exclusively in its capacity as escrow agent acting under color of state law, Citibank is not alleged to have committed any individual conduct outside of its role as escrow agent to the state. Thus, Citibank may avail itself of the same defenses and immunities protecting the principals. *Strawser*, 126 F.Supp.2d at 1002 n. 6. The plaintiffs do not dispute that a finding of Eleventh Amendment immunity for the state defendants would extend also to Citibank. The court grants Citibank's motion to dismiss on the same Eleventh Amendment immunity grounds.

IT IS THEREFORE ORDERED that the plaintiffs' motion for oral argument (Dk.45) is denied;

IT IS FURTHER ORDERED that the motion to dismiss (Dk.25) filed by the defendants Kansas Attorney General Carla Stovall ("Attorney General") and Secretary of Kansas Department of Social and Rehabilitation Services Janet Schalansky ("S.R.S.Secretary") is granted;

IT IS FURTHER ORDERED that the motion to dismiss (Dk.42) filed by the defendant Citibank, N.A. is granted.