280 F.3d 116
 Lawrence TYLER, on behalf of himself and all others similarly situated, Plaintiff-Appellant,
v.
James H. DOUGLAS, Tobacco Settlement Escrow Agent, in his official capacity, William H. Sorrell, Attorney General of Vermont, in his official capacity, Eileen Elliot, Commissioner, Vermont Department of Social Welfare, in her official capacity and Lori Collins, Third Party Liability Supervisor, Vermont Department of Social Welfare, in her official capacity, Defendants-Appellees.
 Docket No. 00-7839.
 United States Court of Appeals, Second Circuit.
 Argued May 1, 2001.
 Decided October 16, 2001.
 
 1
 Antonio Ponvert III, Koskoff Koskoff & Bieder, P.C., Bridgeport, Conn. (Michael E. Cassidy, Richard T. Cassidy, Hoff, Curtis, Pacht, Cassidy & Frame, P.C., Burlington, Vt., on the brief), for plaintiffs-appellants.
 
 
 2
 Joseph L. Winn, Asst. Atty. Gen., Montpelier, Vt. (Donelle Staley, Julie Brill, Asst. Atty. Gen., Montpelier, Vt., on the brief), for defendants-appellees.
 
 
 3
 (Frankie Sue Del Papa, Atty. Gen., Reno, Nev., John Albrecht, Senior Dep. Atty. Gen., Reno, Nev., submitted a brief, in support of defendants-appellees, for amici curiae the States of Nevada, et al.).
 
 
 4
 Before: NEWMAN and CABRANES, Circuit Judges, and THOMPSON,* District Judge.
 
 
 5
 THOMPSON, District Judge.
 
 
 6
 In July 1998, the State of Vermont filed a lawsuit against manufacturers of tobacco products, seeking reimbursement of Medicaid expenditures made by the State for tobacco-related health conditions. Vermont had filed a separate lawsuit asserting other claims in May 1997, and in November 1998, Vermont settled all of its litigation against the tobacco manufacturers pursuant to a Master Settlement Agreement. The claims of over 40 other states and governmental entities that were pursuing a variety of causes of action against tobacco manufacturers were also settled pursuant to that agreement. The claims settled by Vermont under the terms of the Master Settlement Agreement are much broader in scope than the claims asserted by the State in its lawsuits. The amount of money to be paid to Vermont pursuant to the Master Settlement Agreement will far exceed Medicaid expenditures by the State for tobacco-related health conditions.
 
 
 7
 Plaintiff Lawrence Tyler is a citizen of the State of Vermont who suffers from a tobacco-related health condition and has received medical assistance benefits for that condition through Vermont's Medicaid program. Tyler brought this action for a declaratory judgment and injunctive relief on behalf of all similarly situated persons, seeking to obtain the portion of the payments to Vermont under the Master Settlement Agreement in excess of that necessary to reimburse the State for its Medicaid expenditures for tobacco-related health conditions.
 
 
 8
 Tyler claims that the federal and Vermont laws governing the State's participation in the Medicaid program require that Vermont disburse the payments it receives under the Master Settlement Agreement in accordance with the provisions of 42 U.S.C. § 1396k(b). Each of the claims for relief set forth in his complaint is premised on this contention. The defendants moved to dismiss Tyler's complaint. The United States District Court for the District of Vermont (J. Garvan Murtha, Chief Judge) granted the motion to dismiss, finding that the plaintiff's claim was barred by the Eleventh Amendment as well as by 42 U.S.C. § 1396b(d)(3)(B)(ii), and finding that the complaint should also be dismissed for a number of other reasons. We conclude that the plaintiff's claim is barred by 42 U.S.C. § 1396b(d)(3)(B)(ii), and we affirm the judgment of the District Court on that basis and do not decide the question of whether the plaintiff's complaint is barred by the Eleventh Amendment.
 
 BACKGROUND
 
 9
 Medicaid is a joint federal and state cost-sharing program to finance medical services to low-income people. See Medicaid Act (Title XIX of the Social Security Act), 42 U.S.C. §§ 1396, 1396a-1396u (1992 & West Supp.2000). The Centers for Medicare and Medicaid Services (formerly known as the "Health Care Financing Administration"[1]) of the United States Department of Health and Human Services ("HHS") is the federal agency which administers the Medicaid program at the federal level by promulgating regulations which implement the Medicaid program and which are binding on participating states.
 
 
 10
 Although participation in the program is voluntary, participating States must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of [HHS]. To qualify for federal assistance, a State must submit to the Secretary and have approved a "plan for medical assistance," § 1396a(a), that contains a comprehensive statement describing the nature and scope of the State's Medicaid program. 42 C.F.R. § 430.10 (1989).
 
 
 11
 Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). See also Concourse Rehab. & Nursing Ctr. v. Whalen, 249 F.3d 136, 139 (2d Cir.2001).
 
 
 12
 The Medicaid Act requires that a state plan must provide that "the State ... must take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the plan...." 42 U.S.C.A. § 1396a(a)(25)(A) (West Supp.2000). A state plan must also provide that "in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State ... will seek reimbursement for such assistance to the extent of such legal liability." 42 U.S.C.A. § 1396a(a)(25)(B) (West Supp.2000).
 
 
 13
 The amount of federal funding in a state's program is determined by a statutory formula set forth in 42 U.S.C. §§ 1396b(a) and 1396d(b). Section 1396b(d) provides for federal payments to each state made via quarterly advances based on the state's estimated expenditures. In estimating a state's expenditures, an adjustment is made to reflect overpayments or underpayments. See 42 U.S.C. § 1396b(d). Generally, amounts collected from third parties in compliance with 42 U.S.C. § 1396a(a)(25) are treated as overpayments to the extent that they exceed the amount necessary to reimburse the state for its expenditures, see 42 U.S.C. § 1396b(d)(2)(B), and the pro rata share to which the federal government is equitably entitled of the net amount recovered by a state during any quarter with respect to medical assistance furnished under that state's plan is also treated as an overpayment, see 42 U.S.C. § 1396b(d)(3)(A). Treatment of such amounts as overpayments decreases the amount the federal government must pay to the state. See 42 U.S.C. § 1396b(d)(2)(A).
 
 
 14
 The Medicaid Act also requires, in connection with a state's obligation to seek reimbursement from legally liable third parties, that a state plan must provide for "mandatory assignment of rights of payment for medical support and other medical care owed to recipients in accordance with [42 U.S.C. § 1396k]." 42 U.S.C.A. § 1396a(a)(45) (West Supp.2000). Section 1396k provides that:
 
 
 15
 (a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall —
 
 
 16
 (1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required —
 
 
 17
 (A) to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment of medical care from any third party;
 
 
 18
 (b) Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.
 
 
 19
 42 U.S.C.A. § 1396k (West Supp.2000).
 
 
 20
 Vermont enacted specific statutes and adopted specific policies and procedures to enable it to comply with its obligations under the Medicaid Act. For instance, in connection with § 1396k, Vermont requires all Medicaid applicants and recipients to sign, as a condition of eligibility, form DSW 202, which contains an assignment to the State of all rights of payment by third persons for medical support and other medical care for the recipient. Also, Vermont enacted 33 V.S.A. § 1907, a statute giving the State, in any case where a third person has a legal liability to make payment for expenses covered under the State's Medicaid program, subrogation rights to payment to the extent the State has made payment for such covered expenses. Vt. Stat. Ann. tit. 33, § 1907 (2000).
 
 
 21
 In May 1997, Vermont sued manufacturers of tobacco products in state court in Vermont, alleging public health and consumer fraud violations and seeking monetary, equitable and injunctive relief. Then, in April 1998, Vermont enacted a new statute, 33 V.S.A. § 1911, giving the State a direct cause of action against tobacco manufacturers for recovery of Medicaid expenditures for tobacco-related health conditions. Vt. Stat. Ann. tit. 33, § 1911 (2000). Consequently, in July 1998, Vermont filed a second state lawsuit against manufacturers of tobacco products, seeking reimbursement of Medicaid expenditures pursuant to 33 V.S.A. § 1911. Vermont's July 1998 complaint contained five statutory causes of action, each based on 33 V.S.A. § 1911(c).
 
 
 22
 Vermont settled its 1997 and 1998 lawsuits (collectively, the "Vermont Actions") pursuant to a certain Master Settlement Agreement ("MSA") entered into between manufacturers of tobacco products and over 40 states and other governmental entities (the "Settling States") in November 1998. In the MSA, the tobacco companies agreed, inter alia, to make annual payments in perpetuity to the Settling States, to fund a national foundation dedicated to significantly reducing the use of tobacco products by youth and to abide by certain restrictions on promotional and lobbying activity. In return, the Settling States gave the manufacturers of tobacco products an unconditional release of a broad array of claims and potential claims based on past and future conduct, acts or omissions. The "Released Claims" were much broader in scope than the claims asserted by the State in the Vermont Actions. Vermont expects to collect approximately $805 million in payments over the next 25 years pursuant to the MSA. The amount of these payments will far exceed the amount the State has paid and will pay in terms of Medicaid expenditures for tobacco-related health conditions.
 
 
 23
 In 1999, Congress debated whether payments under the MSA to Settling States were covered by the Medicaid Act, in which case the federal government would have a claim to a portion of those funds. There had been no agreement on this point. Prompted by a recognition of "the uncertainty about the legal status of the settlement funds and the desirability of congressional resolution in some manner," Congress addressed the status of the tobacco settlement funds in a rider to the Emergency Supplemental Appropriations Act of 1999, Pub.L. No. 106-31, 113 Stat. 57, 103-04. Harris v. Owens, 264 F.3d 1282, 1295 (10th Cir.2001). It amended 42 U.S.C. § 1396b(d)(3) by adding thereto the current subparagraph (B). See 42 U.S.C.A. § 1396b(d)(3)(B)(i) and (ii) (West Supp.2000). We set out and discuss the text of subparagraph (B) below.
 
 DISCUSSION
 
 24
 Tyler contends that funds received by the State under the MSA constitute a Medicaid recovery, and that the Medicaid Act provides a federally mandated disbursement scheme for all Medicaid recoveries by the State from third parties. He argues that this mandated disbursement scheme, which is set forth in 42 U.S.C. § 1396k(b), applies regardless of whether the State brings its claim under a direct action statute, such as 33 V.S.A. § 1911, or pursuant to assigned rights provided for under § 1396k, because under either scenario, the State is merely fulfilling its obligation pursuant to 42 U.S.C. § 1396a(a)(25). Thus, he concludes the State is legally bound to disburse the amounts payable to it under the MSA in accordance with the provisions of § 1396k(b). Under such a disbursement scheme, the State would disburse to Tyler and similarly situated individuals that portion of the payments received by the State under the MSA in excess of the amount necessary to reimburse the State for its past or future Medicaid expenditures for tobacco-related health conditions.
 
 
 25
 The District Court dismissed Tyler's complaint as barred by the Eleventh Amendment and also on a number of other grounds. One of those other grounds was that Tyler's claim is barred by 42 U.S.C. § 1396b(d)(3)(B)(ii), and the State has included this point among its arguments on appeal. Because we conclude the complaint was properly dismissed on the ground that Tyler's claim is barred by § 1396b(d)(3)(B)(ii), we do not decide the question of whether there are Eleventh Amendment grounds for dismissal. "It is a familiar prudential rule of our jurisprudence that courts will not decide difficult constitutional questions if other bases of decision are available." Fed. Election Comm'n v. Survival Educ. Fund, Inc., 65 F.3d 285, 290 n. 2 (2d Cir.1995) (citations omitted). See also Floyd v. Thompson, 227 F.3d 1029, 1034 (7th Cir.2000) (recognizing, in case presenting identical issues, that "[t]he Eleventh Amendment analysis is complex" and electing to decide the case on another basis; also, giving examples of issues that court would have been required to decide had it proceeded with the Eleventh Amendment analysis); McClendon v. Ga. Dept. of Cmty. Health, 261 F.3d 1252, 1258 (11th Cir.2001) (in case presenting identical issues, court exercised its discretion as to state official defendants to bypass Eleventh Amendment issue, interpreting defendants' position to be "[o]nly if we are going to decide the merits issue against them do they insist upon a ruling on the Eleventh Amendment issue."). But see Harris, 264 F.3d at 1287-88 (in case presenting identical issues, court noted that, although it agreed with the court in Floyd that the merits of the case were more easily resolved than was the Eleventh Amendment issue, it was "compelled by its precedent to decide the Eleventh Amendment issue first").[2]
 
 
 26
 We review de novo the District Court's decision to dismiss Tyler's complaint on the ground that his claim is barred by 42 U.S.C. § 1396b(d)(3)(B)(ii). See Sullivan v. County of Suffolk, 174 F.3d 282, 285 (2d Cir.1999) ("We review de novo the district court's interpretation of a statute.").
 
 
 27
 Subparagraph (B) of § 1396b(d)(3), which was added by the 1999 amendments to the Medicaid Act, reads as follows:
 
 
 28
 (i) Subparagraph (A) and paragraph (2)(B) shall not apply to any amount recovered or paid to a State as part of the comprehensive settlement of November 1998 between manufacturers of tobacco products ... and State Attorneys General, or as part of any individual State settlement or judgment reached in litigation initiated or pursued by a State against one or more such manufacturers.
 
 
 29
 (ii) Except as provided in subsection (i)(19), a State may use amounts recovered or paid to the State as part of a comprehensive or individual settlement, or a judgment, described in clause (i) for any expenditures determined appropriate by the State.
 
 
 30
 42 U.S.C.A. § 1396b(d)(3)(B)(West Supp. 2000). The exception in clause (ii) refers to a prohibition against making payments "with respect to any amount expended on administrative costs to initiate or pursue litigation described in subsection (d)(3)(B)." 42 U.S.C.A. § 1396b(i)(19)(West Supp.2000).
 
 
 31
 Tyler argues that § 1396b(d)(3)(B) applies only to the portion of a state's tobacco settlement funds that would have constituted the federal government's share of the settlement by virtue of § 1396b(d)(3)(A) or § 1396b(d)(2)(B), which provide for the treatment of certain amounts as overpayments. He construes clause (i) of § 1396b(d)(3)(B) as prohibiting reduction of the amount of federal payments on account of a state's receipt of tobacco settlement funds, and clause (ii) as providing that, with one exception, there is no restriction on a state's ability to spend funds that, but for the provisions of clause (i), would have constituted the federal government's share of the tobacco settlement.
 
 
 32
 In determining the proper interpretation of a statute,
 
 
 33
 [t]his court will "look first to the plain language of a statute and interpret it by its ordinary, common meaning." Luyando v. Grinker, 8 F.3d 948, 950 (2d Cir.1993). "If the statutory terms are unambiguous, our review generally ends and the statute is construed according to the plain meaning of its words." Greenery Rehab. Group, Inc. v. Hammon, 150 F.3d 226, 231 (2d Cir.1998).
 
 
 34
 Sullivan, 174 F.3d at 285 (interpreting 42 U.S.C. § 1396p(d)). Accordingly, we look first to the plain language of § 1396b(d)(3)(B). We agree that clause (i) of paragraph (3)(B) serves only to exempt the State's tobacco settlement funds from being treated as an overpayment pursuant to § 1396b(d)(3)(A) and § 1396b(d)(2)(B). However, the plain language of clause (ii) of paragraph (3)(B) compels the conclusion that § 1396b(d)(3)(B)(ii) is not limited in applicability to that portion of a state's tobacco settlement funds that would have been treated as an overpayment but for the provisions of paragraph (3)(B)(i).
 
 
 35
 The language of paragraph (3)(B)(ii) is clear and unambiguous. By its express terms, it applies to "amounts recovered or paid to the State as part of a comprehensive or individual settlement ...," and it provides that, with the exception for certain costs associated with litigation, states may use tobacco settlement funds "for any expenditures determined appropriate by the State." 42 U.S.C. § 1396b(d)(3)(B)(ii). Nothing in the language of this paragraph limits, expressly or by implication, its applicability to that portion of the tobacco settlement funds that would otherwise be treated as an overpayment. Giving the language its ordinary, common meaning, "amounts recovered or paid to the State as part of" a tobacco settlement include more than just that portion of a state's tobacco settlement funds that would have been treated as an overpayment but for the provisions of clause (i). Such amounts include the balance of those settlement funds as well.
 
 
 36
 Tyler contends the State's tobacco settlement funds should be divided into two parts, i.e., a portion equal to the amount the State is entitled to retain as reimbursement for medical assistance payments made by the State for tobacco-related health conditions, and a portion equal to the excess over that amount. However, under the ordinary, common meaning of the statutory language at issue here, both of these parts would be included in their entirety in "amounts recovered or paid to the State" under the MSA. Otherwise, those funds could not, in the language of § 1396k(b), be "retained" by the State or "paid" by the State to Tyler and other Medicaid recipients.
 
 
 37
 We agree with the court in Harris that: [a]ll of the settlement funds go to the state....; in plain English, the state has "recovered" or "been paid" funds, even if those funds are in turn owed to a third party. Thus when § 1396b(d)(3)(B)(ii) refers to money "recovered or paid to the State," it is referring to any money that goes to the state under the tobacco settlement agreement.
 
 
 38
 Harris, 264 F.3d at 1295-96. See also Strawser v. Lawton, 126 F.Supp.2d 994, 1000 (S.D.W.Va.2001) ("[N]o construction or divination of Congressional intent is necessary.... [T]he statute is an unambiguous Congressional mandate vesting in the participating states a complete right, title, and interest to the settlement proceeds, excepting only litigation expenses.").
 
 
 39
 Thus, under the plain language of the statute, § 1396b(d)(3)(B)(ii) applies to all amounts received by the State pursuant to the MSA, and the State has the right, under the express terms of that statute, to use those amounts for any expenditures it determines are appropriate. Therefore, Tyler's claim is barred.
 
 
 40
 The foregoing analysis is based on the plain language of a statute whose language we find to be clear and unambiguous. That is where our inquiry should end "except in rare and exceptional circumstances." Greene v. United States, 79 F.3d 1348, 1355 (2d Cir.1996).
 
 
 41
 Although a statute's plain language is generally dispositive, it sometimes will yield when evidence of legislative history is so strong to the contrary that giving a literal reading to the statutory language will result in defeating Congress' purpose in enacting it. See American Land Title Ass'n, 968 F.2d. at 155; see also United States v. Ron Pair Enters., 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)(urging departure from plain meaning when it would "produce a result demonstrably at odds with the intentions of its drafters.").
 
 
 42
 Id. at 1356. Tyler argues, in substance, that this case presents the equivalent of such rare and exceptional circumstances.
 
 
 43
 Tyler contends that the District Court erred in dismissing his complaint on the basis of § 1396b(d)(3)(B)(ii) because Tyler has rights to a portion of the State's tobacco settlement funds pursuant to a mandatory disbursement scheme provided for under § 1396k(b) and there is no indication in either the language or the legislative history of § 1396b(d)(3)(B)(ii) that it was intended to override those rights. As to the language of the statute, the State takes the position that § 1396b(d)(3)(B)(ii) controls over 42 U.S.C. § 1396k(b) to the extent they are in conflict. We agree.
 
 
 44
 "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." Morton v. Mancari, 417 U.S. 535, 550-51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). "When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim." Greene, 79 F.3d at 1355. Section 1396k(b) is a general statute which applies to all recoveries made under an assignment from any tortfeasor, while § 1396b(d)(3)(B)(ii) is a more specific statute which applies only to amounts recovered or paid to a state as part of a settlement or a judgment reached in litigation with a manufacturer of tobacco products. Thus, to the extent the two statutes are in conflict, § 1396b(d)(3)(B)(ii), as the statute addressing the matter at issue in specific terms, controls unless there is a clear intention by Congress to the contrary.
 
 
 45
 Here, even if one assumes arguendo that Tyler would otherwise have rights to a portion of the State's tobacco settlement funds pursuant to § 1396k(b), there is no indication in the language of either statute of a clear intention on the part of Congress that § 1396k(b) be controlling over the statute specifically enacted by Congress to address the states' rights to payments they recover under the MSA and any other amounts they recover or are paid as part of a settlement or judgment in litigation against manufacturers of tobacco products. Likewise, there is no indication in the legislative history of any such intention, much less a clear intention, on the part of Congress.[3] We note that in Harris, the court also reviewed the legislative history and discussed it in detail. It stated that it had "found nothing that indicates that Congress considered individual claims at all. Thus, the reference to legislative history is unhelpful." Harris, 264 F.3d at 1297. We concur with that assessment.
 
 
 46
 Thus, there is no ambiguity in the language of § 1396b(d)(3)(B)(ii) and no other reason why further inquiry into the meaning of this statute would be appropriate. See Greene, 79 F.3d at 1353 ("[W]hen we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.") (internal quotation marks and citation omitted). Accordingly, we conclude that the District Court properly dismissed Tyler's complaint because his claim is barred by 42 U.S.C. § 1396b(d)(3)(B)(ii).
 
 CONCLUSION
 
 47
 For the reasons stated, the judgment appealed from is affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Alvin W. Thompson of the United States District Court for the District of Connecticut, sitting by designation
 
 
 [1]
 Effective July 1, 2001, the name of the Health Care Financing Administration was changed to "Centers for Medicare and Medicaid Services."
 
 
 [2]
 InHarris, 264 F.3d at 1289-97, the court then concluded that the Medicaid recipient's claim was not barred by the Eleventh Amendment, but was barred by 42 U.S.C. § 1396b(d)(3)(B)(ii). Also, the court noted there that: "[v]irtually every court, state or federal, that has considered one of these cases has dismissed it either because of sovereign immunity or because the Master Settlement Agreement was not a Medicaid settlement subject to § 1396k(b). [See, e.g.], Watson v. Texas, 261 F.3d 436 (5th Cir.2001)(merits); Floyd v. Thompson, 227 F.3d 1029 (7th Cir.2000)(merits); Cardenas v. Anzai, 128 F.Supp.2d 704 (D. Haw.2001)(Eleventh Amendment); Strawser v. Lawton, 126 F.Supp.2d 994 (S.D.W. Va.2001)(merits); Skillings v. Illinois, 121 F.Supp.2d 1235 (C.D.Ill.2000)(merits); Martin v. New Mexico, 197 F.R.D. 694 (D.N.M.2000)(Eleventh Amendment); Barton v. Summers, 111 F.Supp.2d 989 (M.D.Tenn.2000)(Eleventh Amendment); State v. Superior Court, 83 Cal.App.4th 597, 99 Cal.Rptr.2d 735 (Ct.App. 2000) (merits). The sole exception of which we are aware is Lewis v. Clark, No. LACV-037031 (Iowa Dist.Ct. July 21, 2000), an unreported decision denying Iowa's motion to dismiss with little discussion." See also McClendon, 261 F.3d at 1262 (merits).
 
 
 [3]
 Tyler relies on only one aspect of the legislative history of § 1396b(d)(3)(B), namely, that there was competing legislation that would have required the states to use "a portion of such funds for tobacco use prevention and health care and early learning programs." 145 Cong. Rec. S2503-05 (1999). However, that fact adds no weight to Tyler's argument