# United States Court of Appeals
## For the First Circuit
————————————

No. 01-1410

BLANCHE E. GREENLESS, on behalf of herself and all others similarly
situated,
Plaintiff, Appellant,

v.

LINCOLN C. ALMOND, in his capacity as Governor of the State of Rhode
Island; CHRISTINE FERGUSON, in her capacity as Director of the
Department of Human Services for the State of Rhode Island; and
SHELDON WHITEHOUSE, in his capacity as Attorney General for the State
of Rhode Island,
Defendants, Appellees.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

————————————

Before

Lynch, Circuit Judge,
Coffin, Senior Circuit Judge,
and Young,[*] District Judge.

————————————

Antonio Ponvert III, with whom Michael A. St. Pierre, James E.
Kelleher, Revens, Revens & St. Pierre, and Koskoff, Koskoff & Bieder,
P.C., were on brief for appellant.

Neil F. X. Kelly, Special Assistant Attorney General, with whom
Sheldon Whitehouse, Attorney General, was on brief for appellees.

————————————

[*]    Of the District of Massachusetts, sitting by designation.

**LYNCH,** <u>Circuit Judge</u>.  This case concerns claims made on the allocation of monies to the states, specifically Rhode Island, from the 1998 Master Settlement Agreement in the tobacco litigation.

Blanche E. Greenless appeals the dismissal of her suit under 42 U.S.C. § 1983 for declaratory and injunctive relief against the Governor of Rhode Island and various other state officials, all in their official capacities.  Greenless seeks to represent all of Rhode Island's Medicaid recipients who have suffered damages from the use of tobacco.  She claims that federal law requires Rhode Island to pay that class a portion of the proceeds from the settlement of its claims against the tobacco industry, and that Rhode Island is wrongfully converting what are essentially Medicaid recovery collections.

The district court dismissed Greenless's suit without a hearing as barred by the doctrine of state sovereign immunity embodied in the Eleventh Amendment.  We affirm the dismissal of the action, but on different grounds, holding that Greenless has

failed to state a claim on which relief can be granted due to a recent amendment of the Medicaid statute.  We do not reach the difficult question whether a claim of the sort Greenless asserts, if provided by federal law, would be barred by the Eleventh Amendment.

I.

<u>A.  Facts</u>

During the 1990s, more than forty of the fifty states, including Rhode Island, filed suits against the major manufacturers of tobacco products.  <u>See</u> <u>State</u> v. <u>Brown & Williamson Tobacco Corp.</u>, No. 97-3058 (R.I. Sup. Ct. Dec. 17, 1998) (consent decree and final judgment).  The exact theories of recovery varied from state to state.  Generally, the states alleged that the tobacco industry had misled the public by concealing the risks of cigarette smoking and had therefore caused the states to spend vast sums of public money on providing health care for those made ill by tobacco.  Unlike prior attempts to hold tobacco manufacturers liable for smoking-related illnesses or deaths, the states' suits resulted in a lucrative settlement, recorded by the Master Settlement Agreement.  <u>See</u> National Association of Attorneys General, <u>Master Settlement Agreement</u>, <u>at</u> http://www.naag.org/tobac/

cigmsa.rtf (Nov. 23, 1998).  According to Greenless, under the Agreement Rhode Island will receive approximately $1.408 billion.[1]

The expenditures on health care on which the state's suits relied arose in significant part through the Medicaid program.  The Medicare and Medicaid programs are the two largest sources of public funding for health care in the United States. Medicare, which provides health care primarily to the elderly and to some individuals with disabilities, receives funds exclusively from the federal government.  Medicaid, which provides health care primarily to the indigent, receives funds from both the federal government and the states.  State Medicaid expenditures consume large portions of states' budgets; in fiscal year 2000, Rhode Island spent 22.6% of its budget on Medicaid.  Rhode Island Department of Human Services, Annual Report: Fiscal Year 2000: Rhode Island Medicaid Program 13,

---

[1]     Payments under the Agreement are contingent on many factors, and assigning values to a state's right to payment is therefore difficult.  See Floyd v. Thompson, 227 F.3d 1029, 1038 (7th Cir. 2000) ("The final amount to be paid . . . is unknown and unknowable at this point . . . .").  The question presented by this appeal is not quantitative, so exact amounts are not material.  Rhode Island stands to receive a great deal of money.

available at http://www.dhs.state.ri.us/dhs/reports/ma2000.pdf. When the states sought to recover funds spent on health care made necessary by smoking, some of their alleged damages were Medicaid expenditures. So stated Rhode Island's complaint at the time.

The recovery of Medicaid expenditures from the tobacco industry arguably brought into play certain aspects of the federal Medicaid statute. When a state agrees to participate in Medicaid by enacting a statute, it must create a plan that meets requirements specified by Congress. That state Medicaid plan must "provide that, as a condition of eligibility for medical assistance under the State plan . . . the individual is required -- (A) to assign the State any rights . . . to payment for medical care from any third party." 42 U.S.C. § 1396k(a) (1994).

Moreover, when a state, acting on an individual's assignment of his or her rights, has recovered from a third party compensation for state expenditures to provide health care via Medicaid, the state may not necessarily keep all of the money. Instead,

[s]uch part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), <u>and the remainder of such amount collected shall be paid to such individual</u>.

<u>Id.</u> § 1396k(b) (emphasis added).[2] After the state and federal governments are reimbursed, any excess is paid to the individual, "who is usually a person of limited resources." 45 Fed. Reg. 8982, 8983 (Feb. 11, 1980).

If these provisions apply to the Master Settlement Agreement (Rhode Island claims they do not because the suit was brought not as a § 1396k assignment but under different theories) then at least some of the money that the tobacco industry paid the states under the Agreement belongs to the

---

[2] This language is clarified by regulation:

The agency must distribute collections as follows --
    (a) To itself, an amount equal to State Medicaid expenditures for the individual on whose right the collection was based.
    (b) To the Federal Government, the Federal share of the State Medicaid expenditures, minus any incentive payment made in accordance with [a related provision] . . . .
    (c) To the recipient, any remaining amount. . . .

42 C.F.R. § 433.153 (2000).

federal government as appropriate reimbursement within the meaning of § 1396k(b). If, as well, the states received more money from the tobacco industry under the Agreement than was necessary to reimburse both the state and federal governments for medical assistance payments made on behalf of smokers, then the remainder belongs to the smokers on whose behalf those payments were made. Greenless's claim rests on this theory.

Congress has recently amended the statute. The 1999 Emergency Supplemental Appropriations Act exempts from the normal procedures by which the federal government takes its share of state recoveries "any amount recovered or paid to a State as part of the comprehensive settlement of November 1998 between manufacturers of tobacco products . . . and State Attorneys General." Pub. L. No. 106-31, § 3031, 113 Stat. 57, 103-04 (1999) (codified at 42 U.S.C. § 1396b(d)(3)(B)(i) (Supp. V 1999)). It furthermore provides, with an exception irrelevant to this case, that "a State may use amounts recovered or paid to the State as part of a comprehensive . . . settlement . . . described in [the prior] clause . . . for any expenditures determined appropriate by the State." Id., 113 Stat. at 104 (codified at 42 U.S.C. § 1396b(d)(3)(B)(ii)).

-8-

The parties agree that this new language removes any claim to the states' tobacco settlement money by the federal government. The question presented by this appeal is whether the language also removes any possible claim to that money under federal law by the individuals whose illnesses caused the states to spend the money.

## B. History

Greenless filed this suit in the District of Rhode Island against the various defendants in their official capacities, claiming that Rhode Island must pay her and the members of her class the amount by which the tobacco settlement exceeds its actual costs. She alleged this amount to be substantial. For her cause of action she relied on 42 U.S.C. § 1983 and its broad-ranging remedies for violations of federal rights under color of state law. She asked for declaratory and injunctive relief to compel Rhode Island's officials to pay her the alleged excess.

The defendants moved to dismiss on two grounds. First, they argued that Greenless's suit is barred under the Eleventh Amendment by state sovereign immunity as a suit for, in effect, money damages against the treasury of a state. Second, they argued that Greenless has no cause of action under § 1983 because her rights under the Medicaid statute have not been and will not be violated. Greenless in response claimed that her suit does not run afoul of the Eleventh Amendment because the state is not a party, only state officials, and because she seeks only prospective relief permissible under the doctrine of

<u>Ex parte Young</u>, 209 U.S. 123 (1908), as explained in <u>Edelman</u> v. <u>Jordan</u>, 415 U.S. 651 (1974). She also responded to the defendants' statutory arguments. On February 26, 2001, the district court dismissed the case in a seven-page opinion addressing only the question of state sovereign immunity. <u>Greenless</u> v. <u>Almond</u>, C.A. No. 00-037ML (D.R.I. Feb. 26, 2001). This appeal followed. The defendants make on appeal both sets of arguments presented to the district court in support of the judgment.

## II.

Our review of the district court's judgment in this case is de novo. <u>See</u> <u>Mills</u> v. <u>Maine</u>, 118 F.3d 37, 41 (1st Cir. 1997) (reviewing de novo a dismissal on Eleventh Amendment grounds); <u>Garita Hotel Ltd. P'ship</u> v. <u>Ponce Fed. Bank, F.S.B.</u>, 958 F.2d 15, 17 (1st Cir. 1992) (same for failure to state a claim). As always, we may affirm a district court's judgment on any grounds supported by the record. <u>Doe</u> v. <u>Anrig</u>, 728 F.2d 30, 32 (1st Cir. 1984). Moreover, this circuit has held that federal courts need not answer questions of state sovereign immunity under the Eleventh Amendment before answering other, easier legal questions that would decide a case. <u>Parella</u> v.

-11-

Ret. Bd. of the R.I. Employees' Ret. Sys., 173 F.3d 46, 53-57 (1st Cir. 1999) (declining to apply to cases involving the Eleventh Amendment the rule of Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998), in which "a majority of justices rejected the use of 'hypothetical jurisdiction'").

A.  Eleventh Amendment and constitutional avoidance

Other plaintiffs have brought cases similar to this one against numerous other states.  None have yet succeeded.[3]  The only circuit courts[4] to address the Eleventh Amendment question, the Fifth and Tenth Circuits, have held that the Amendment would not prevent the plaintiffs in a case such as this one from obtaining the relief they seek, if that relief were available under federal law.  Harris v. Owens, 264 F.3d 1282, 1289-94

---

[3]    Our discussion of similar cases in this opinion is not exhaustive and includes only those published opinions useful to give context to our decision today.

[4]    Some district courts have decided, as the district court concluded in this case, that state sovereign immunity bars such claims.  E.g., Clark v. Stovall, 158 F. Supp. 2d 1215 (D. Kan. 2001); Cardenas v. Anzai, 128 F. Supp. 2d 704 (D. Haw. 2001); Martin v. New Mexico, 197 F.R.D. 694 (D.N.M. 2000); Barton v. Summers, 111 F. Supp. 2d 989 (M.D. Tenn. 2000).  The decision of the District of New Mexico in Martin preceded the Tenth Circuit's decision in Harris, discussed in text; Harris is now, of course, the law of that circuit.

(10th Cir. 2001) (holding that the relief requested is permissible under the doctrine of Ex parte Young); Watson v. Texas, 261 F.3d 436, 440-43 (5th Cir. 2001) (holding that Texas waived its sovereign immunity in the settlement agreement).

Every court to consider the question has, however, decided that § 1396k(b) does not apply to the state tobacco settlements, either because the settlements are not recoveries of the sort governed by that section as a general matter or because § 1396b(d)(3)(B)(ii) specifically exempts the settlements. See Tyler v. Douglas, No. 00-7839, 2001 WL 1230630 (2d Cir. Oct. 16, 2001) (relying on § 1396b(d)(3)(B)(ii)); Harris, 264 F.3d at 1294-97 (same); McClendon v. Ga. Dep't of Cmty. Health, 261 F.3d 1252, 1259-62 (11th Cir. 2001) (relying on § 1396k(b));[5] Floyd v. Thompson, 227 F.3d 1029, 1035-38 (7th Cir. 2000) (relying on § 1396k(b) and on Wisconsin assignment law); Skillings v. Illinois, 121 F. Supp. 2d 1235 (C.D. Ill. 2000) (following Floyd while applying Illinois law); see also State v. Superior Court, 99 Cal. Rptr. 2d 735 (Cal. App. 2000)

_____

[5]     Judge Noonan would have relied on § 1396b(d)(3)(B)(ii). McClendon, 261 F.3d at 1262 (Noonan, J., concurring in the judgment).

-13-

(interpreting portion of state code implementing federal statutory scheme); Brown v. State, 617 N.W.2d 421, 425-27 (Minn. Ct. App. 2000) (same).

In summary, the courts that have considered questions of state sovereign immunity similar to those presented by this case have split, and the circuit courts among this group have held the Eleventh Amendment not to bar claims such as Greenless's. Those that have considered statutory questions similar to those here are so far unanimous, although different courts have followed different reasoning to the same conclusion.

We do not decide any question of state sovereign immunity today. We will, however, sketch the outlines of the question on the facts of this case in order to explain our reasons for avoiding it. As a general matter the several states are immune under the Eleventh Amendment from private suit in the federal courts, absent their consent.[6] Among the exceptions to this rule is the doctrine of Ex parte Young, 209 U.S. 123 (1908), which allows a plaintiff to enforce a claim of federal

---

[6] States do not waive their Eleventh Amendment immunity merely by participating in the Medicaid program. Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147 (1981) (per curiam).

right by obtaining injunctive or declaratory relief against a state officer in the officer's official capacity. In <u>Edelman</u> v. <u>Jordan</u>, 415 U.S. 651 (1974), the Supreme Court explained that the purpose of this exception is to prevent continuing violations of federal law, but not to remedy past violations. Therefore, an <u>Ex parte Young</u> plaintiff may obtain prospective, but not retrospective, relief. <u>See</u> <u>id.</u> at 664-65; <u>see</u> <u>also</u> <u>Idaho</u> v. <u>Coeur d'Alene Tribe</u>, 521 U.S. 261, 294 (1997) (O'Connor, J., concurring in part and concurring in the judgment) ("[A] <u>Young</u> suit is available where a plaintiff alleges an <u>ongoing</u> violation of <u>federal</u> law, and where the relief sought is <u>prospective</u> rather than <u>retrospective</u>."); <u>id.</u> at 298 (Souter, J., dissenting) (observing that, given the disposition of the Justices in that case, "Justice O'Connor's view is the controlling one").

Greenless claims to seek a prospective remedy for an allegedly ongoing violation of federal law that will recur each time the state actually receives an installment payment of the tobacco settlement. The defendants claim she seeks retrospective compensation for the alleged violation that the state committed when it reached agreement with the tobacco

-15-

industry without providing that a portion of the proceeds would go to Greenless and her class. Because of the Supreme Court's recent reinvigoration of the doctrine of state sovereign immunity, see, e.g., Seminole Tribe v. Florida, 517 U.S. 44 (1996); Alden v. Maine, 527 U.S. 706 (1999), private plaintiffs' ability to enforce congressionally enacted restraints on the states' use of many types of funds may well turn on just such questions to a degree few readers of Edelman would have predicted when that case was decided.

It is not, however, the role of the federal courts to answer legal questions unless specific cases need answers. This principle applies with special force to complex questions of constitutional law, so that courts often avoid such questions by choosing to focus on other aspects of a case that adequately dispose of the controversy between the parties. See Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); U.S.I. Props. Corp. v. M.D. Constr. Co., 230 F.3d 489, 495 (1st Cir. 2000) (avoiding a complex Eleventh

-16-

Amendment question in favor of a simpler statutory subject matter jurisdiction question); <u>Parella</u>, 173 F.3d at 56. In this case, the constitutional question is difficult; but, as we discuss below, at least one statutory question is easy and disposes completely of Greenless's suit. We therefore bypass the constitutional question, as have the Second, Seventh, and Eleventh Circuits, in favor of the easier question whether plaintiffs have stated a claim on which relief may be granted.[7]

---

[7] The Tenth Circuit in <u>Harris</u> reached the same conclusion about the relative difficulty of the questions but nevertheless held itself bound to answer the constitutional question because of its prior holding in <u>Martin</u> v. <u>Kansas</u>, 190 F.3d 1120 (10th Cir. 1999), that questions involving the Eleventh Amendment must be reached before all other legal issues in a case. <u>Harris</u>, 264 F.3d at 1288. The Fifth Circuit follows a similar rule. <u>United States ex rel. Foulds</u> v. <u>Tex. Tech Univ.</u>, 171 F.3d 279, 285-88 (5th Cir. 1999). Under <u>Parella</u>, this circuit follows a different one. Several other circuits appear to agree, or at least to leave open some room for judicial discretion. <u>See</u> <u>Tyler</u>, 2001 WL 1230630, at *4 (observing the Tenth Circuit's difficulty, and then deciding the statutory question); <u>McClendon</u>, 261 F.3d at 1258 (distinguishing <u>Seaborn</u> v. <u>Fla. Dep't of Corr.</u>, 143 F.3d 1405 (11th Cir. 1998), which had appeared to announce a holding similar to that of <u>Martin</u>, and reaching the statutory question); <u>United States ex rel. Long</u> v. <u>SCS Bus. & Technical Inst.</u>, 173 F.3d 890 (D.C. Cir. 1999) (holding that a federal court may reach other questions before an Eleventh Amendment question at least if the state involved consents, and observing the benefits of doing so when the Eleventh Amendment question is complex); <u>cf.</u> <u>Floyd</u>, 227 F.3d at 1035 (stating that the court would resolve the Eleventh Amendment issue first "if it appeared in any way possible" that

-17-

See Tyler, 2001 WL 1230630, at *4; Floyd, 227 F.3d at 1034; McClendon, 261 F.3d at 1258.  We recommend this course to the district courts of this circuit as the wiser approach.

B.  Statutory interpretation

There are two reasons to doubt whether the amended Medicaid statute will support Greenless's claim.  The first reason is that it is not clear whether any of the money recovered by Rhode Island is money to which Greenless and her class can stake a claim under § 1396k(b) as it stood at the time of the settlements.  See McClendon, 261 F.3d at 1259-62; Watson, 261 F.3d at 443-45.  The second reason, and the one on which we base our holding, is § 1396b(d)(3)(B)(ii), added by the Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 106-31, 113 Stat. 57, 103-04 (1999).  We find persuasive the reasoning of Tyler, in which the Second Circuit held that § 1396b(d)(3)(B)(ii) was plain and foreclosed a suit similar to the present one.  Tyler, 2001 WL 1230630, at *5-8.  We agree with the Second Circuit that the funds described in that section as available "for any expenditures determined appropriate by the

_____

the plaintiffs could sue the state, and then concluding that such a suit was not possible).

-18-

State" cannot simultaneously be owed to Medicaid recipients. Id. at *6 (quoting § 1396b(d)(3)(B)(ii)).

Greenless makes two arguments against this reading of § 1396b(d)(3)(B)(ii) based on traditional principles of statutory interpretation. First, she claims that the reading violates the presumption against implied repeal. Second, she claims that the reading violates the presumption against giving legislation retroactive effect. Although these two presumptions are well-known landmarks of this area of the law, neither applies to this case.

The "implied repeal" argument is an odd one because at issue is not whether Congress totally repealed § 1396k, but whether it intended to carve out tobacco settlement monies from the reach of that provision. But we will use Greenless's terminology. She argues that the amendment only waives the federal government's share of the settlement and does not affect any rights of individuals. Not so. The presumption against implied repeal, although of particular force when, as here, applied to appropriations riders, nevertheless turns on legislative intent. United States v. Will, 449 U.S. 200, 221-24 (1980) ("[W]hen Congress desires to suspend or repeal a statute

-19-

in force, '[t]here can be no doubt that . . . it could

accomplish its purpose by an amendment to an appropriation bill,

or otherwise.'" (quoting United States v. Dickerson, 310 U.S.

554, 555 (1940)) (second and third alterations in Will)).

Indeed, the presumption results from certain assumptions that

courts make about the legislative process:

> Courts do not lightly assume that one statute has
> implicitly repealed another.  This principle is a
> product of a set of beliefs about the legislative
> process -- in particular, a belief that Congress,
> focused as it usually is on a particular problem,
> should not be understood to have eliminated without
> specific consideration another program that was likely
> the product of sustained attention.

C. R. Sunstein, Interpreting Statutes in the Regulatory State,

103 Harv. L. Rev. 405, 475 (1989) (footnote omitted).  These

concerns have less force where, as here, Congress was responding

to a recent event, the Master Settlement Agreement, and was

clear in its language.  The only even arguable doubt is whether

that repeal covered Medicaid recipients' possible claims as well

as the federal government's.  In our view the plain statutory

language means both.[8]

---

[8]     Even were we to apply the presumption against implied
repeal, that presumption can be overcome by an "irreconciliable
conflict" between statutes.  Matsushita  Elec. Indus. Co. v.

The presumption against retroactivity also does not affect the result in this case. It is true that as a general matter Congress must speak clearly to make its legislation retroactive. Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994).[9] Whatever the proper characterization of the relief Greenless seeks in this case, Congress made its intent clear in the amendment, which "applies to all funds received under the Master Settlement Agreement, whether past, present, or future." Harris, 264 F.3d at 1296.

---

Epstein, 516 U.S. 367, 381 (1996) (quoting Kremer v. Chem. Constr. Corp., 456 U.S. 461, 468 (1982)) (internal quotation marks omitted). It is impossible to reconcile § 1396k(b)'s requirement that "the remainder of [the tobacco settlement] shall be paid to such individual" with § 1396b(d)(3)(B)(ii)'s permission to use the money "for any expenditures determined appropriate by the State."

[9] We disregard the tension between Greenless's argument for Eleventh Amendment purposes that she seeks prospective relief for a future injury, rather than retrospective compensation for a past injury, and her argument that our reading of the statute renders it retroactive. See Landgraf, 511 U.S. at 273 ("When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive.").

III.

To avoid the unnecessary resolution of a difficult constitutional question, we have assessed the merits of Greenless's case and have found that she has failed to state a claim upon which relief may be granted. Therefore, although we do not reach the reasoning of the district court's opinion, its judgment dismissing the case is <u>affirmed</u>.