Jose R. HERNANDEZ–LOPEZ, Yahismar Ortega–Menendez, by themselves and on behalf of their children Jose J. Hernandez–Ortega, and Kevin Yadiel Hernandez–Ortega, Maria Lopez–Lopez, Jose R. Bonilla–Roman, Plaintiffs,

v.

Miguel PEREIRA, Victor Rivera–Gonzalez, Osvaldo Morales–Santiago, Felix Figueroa–Figueroa, Jose A. Torres–Sotomayor, John Doe and Richard Roe, Defendants.

No. CIV. 03–2246CCC.

United States District Court,
D. Puerto Rico.

March 22, 2005.

Michael Rachid–Fournier, Esq., Guaynabo, PR, for Plaintiffs.

Susana Peñagarícano–Brown, Guaynabo, PR, for Defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This is a civil rights action brought under the purview of 42 U.S.C. § 1983 in which plaintiffs allege that a police intervention conducted in a Caguas' ward resulted in the violation of their rights under the Fourth, Fifth and Fourteenth Amendments. Before the Court now is a Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) filed by defendant Miguel Pereira on May 18, 2004 (**docket entry 16**) and joined by defendant Reynaldo Torres on October 29, 2004 (**docket entry 47**)[1], plaintiffs' opposition dated July 9, 2004 (**docket entry 36**), and Pereira's reply of July 30, 2004 (**docket entry 38**).

In essence, the complaint is based on an incident that took place on November 22, 2002 in Morales Ward, located in Caguas, Puerto Rico. Plaintiff José R. Hernández–Lopéz (Hernández) was at a community meeting when he heard his brother yelling that the Puerto Rico Police had come into his store. When Hernández started to walk to the store, he was grabbed by

---

1. Although defendant Víctor Rivera also joined the motion (**docket entry 21**), plaintiffs later desisted of all their claims against him (*see* Partial Judgment (docket entry 73)) so his dismissal request has turned moot. A subsequent request to join the motion and to supplement it filed by defendant Robert García on August 19, 2004 (docket entry 39) was denied by the Court by marginal Order dated September 28, 2004.

defendant Félix Figueroa–Figueroa (Figueroa) who without cause handcuffed him. Once arrested, Hernández was hit in the eye with a fist by defendant Osvaldo Morales–Santiago, struck in the head several times by defendant Reynaldo Torres (Torres) and placed in a van where he was further assaulted by Figueroa. Hernández' mother, plaintiff María López–López, responded to his cries for help and was pushed by Figueroa causing her to fall to the ground. Hernández' common-law wife, plaintiff Yahismar Ortega–Menéndez, also went to assist him at which time Torres ordered his fellow officers to hit everyone and she was struck in the abdomen with a stick. Hernández was eventually taken to a police station where he was placed in a cell and handed citations for two felony charges. At the time of the events, defendant Miguel Pereira (Pereira) was the Superintendent of the Puerto Rico Police Department.

■ In their dismissal motion, movants Pereira and Torres begin by requesting that the claims brought against them in their official capacities be dismissed as barred by the Eleventh Amendment. In addressing this argument, we start with two undisputed factual realities: plaintiffs' Amended Complaint (docket entry 10) seeks only damages, but no injunctive relief, and the Puerto Rico Police Department is an executive department of the Commonwealth of Puerto Rico. *See Reyes v. Supervisor of Drug Enforcement Administration,* 834 F.2d 1093, 1097–98 (1st Cir.1987). Under this scenario, movants are correct in claiming that money damages are unavailable against them in their official capacities, but not necessarily for Eleventh Amendment reasons. As the Court of Appeals explained in *Rosario–Urdaz v. Rivera–Hernández,* 350 F.3d 219, 222 (1st Cir.2003):

The shortest, most direct route to that result evolves out of the fact that neither a State nor its officers in their representative capacities are "persons" within the meaning of 42 U.S.C. § 1983 with respect to actions for damages. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir.1991). This holding squarely forecloses any possibility that the plaintiff[s] will obtain an award of damages payable out of the Commonwealth's coffers. Consequently, we need not address the more nuanced issue of Eleventh Amendment immunity. *See Greenless v. Almond,* 277 F.3d 601, 606–08 (1st Cir.2002) (explaining that Eleventh Amendment issues, like other constitutional issues, should be avoided whenever a case can be disposed of on other grounds); *Parella v. Retirement Bd.,* 173 F.3d 46, 56–57 (1st Cir.1999) (similar).

Thus, partial judgment will be entered DISMISSING the § 1983 claims against movants in their official capacities. However, we note that plaintiffs' parallel action against them in their individual capacities is not barred by either the definition of "person" contained in § 1983 or the Eleventh Amendment. *Cf. Hafer v. Melo,* 502 U.S. 21, 30–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (holding that a state officer sued in his individual capacity may be held personally liable for damages under 42 U.S.C. § 1983 based upon actions taken in his official capacity).

■ Movants next argue that plaintiffs have failed to state a claim against them under § 1983 since they aver not having deprived plaintiffs of any of their rights under the Constitution or laws of the United States nor having been personally involved in any such violations. The complaint has raised claims against defendants

under § 1983 based on plaintiffs' "rights under the Fourth, Fifth, and Fourteenth Amendments to be secure in their persons and property, to be free from excessive force and from malicious prosecution, and to due process," and also for "the illegal seizure of property . . . under the 4th Amendment." Amended Complaint (docket entry 10), p. 7, ¶ 35; *see also id.*, at p. 8, ¶ 42 & p. 10, ¶ 50. Movants state, correctly we should add, that plaintiffs lack a § 1983 claim based on malicious prosecution. The Court of Appeals has expressed in no uncertain terms that there is no viable claim of malicious prosecution grounded on either the procedural or substantive prongs of the Due Process Clause. *See Nieves v. McSweeney*, 241 F.3d 46, 53–54 (1st Cir. 2001) (adhering to the view that " 'substantive due process may not furnish the constitutional peg on which to hang' a federal malicious prosecution tort") (quoting *Albright v. Oliver*, 510 U.S. 266, 271 n. 4, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)); *Perez–Ruiz v. Crespo–Guillen*, 25 F.3d 40, 43 (1st Cir.1994) ("[T]he availability of an adequate remedy for malicious prosecution under commonwealth law [P.R. Laws Ann. tit. 31, § 5141] . . . is fatal to appellants' procedural due process claim.").

Moreover, because "[i]t is an open question whether the Constitution permits the assertion of a section 1983 claim for malicious prosecution on the basis of an alleged Fourth Amendment violation," *Nieves*, 241 F.3d at 54, n. 4, such uncertainty in the legal landscape would at least entitle movants to qualified immunity precluding a § 1983 action for damages against them based on said claim. *See, e.g., Kauch v. Dep't For Children, Youth & Their Families*, 321 F.3d 1, 4 (1st Cir. 2003) (qualified immunity applies if the asserted constitutional right was not "clearly established" at the time of the

alleged violation). As if this were not enough, it is clearly established that "[i]n order to state a cause of action for malicious prosecution, a plaintiff must *allege* that criminal proceedings were initiated against him without probable cause and for an improper purpose and were terminated in his favor." *Meehan v. Town of Plymouth*, 167 F.3d 85, 88–89 (1st Cir.1999) (emphasis ours). But plaintiffs' complaint is devoid of any allegations that the arrest at issue here was done pursuant to a warrant issued without probable cause, implying instead that this was a warrantless arrest. "As a general rule, an unlawful arrest pursuant to a warrant will be more closely analogous to the common law tort of malicious prosecution. An arrest warrant constitutes legal process, and it is the tort of malicious prosecution that permits damages for confinement pursuant to legal process. On the other hand, wrongful warrantless arrests typically resemble the tort of false arrest." *Meehan*, 167 F.3d at 90 (quoting *Calero–Colon v. Betancourt–Lebron*, 68 F.3d 1, 4 (1st Cir.1995)). With regard to a possible malicious prosecution claim based not on the arrest, but on the prosecution itself, there are no allegations either that the criminal proceeding that was initiated following the arrest terminated in plaintiff Hernández' favor. Quite to the contrary, the only allegation on this subject is that Hernández was handed citations for two felony charges, and that his trial was set for May 5, 2004.[2] Amended Complaint, p. 6, ¶ 28–29. Thus, as it is evident that plaintiffs failed to properly allege a malicious prosecution claim, said claim is DISMISSED. Accordingly, partial judgment will be entered DISMISSING the claim for malicious prosecution brought under the Fourth, Fifth and Fourteenth Amendment.

---

**2.** The Amended Complaint was filed on April    21, 2004.

■ This is not to say, however, that plaintiffs have failed to state a claim under the Fourth Amendment. The Amended Complaint contains several allegations describing what appears to be the use of excessive force during the arrest of Hernández. *See e.g.* ¶¶ 19–25; *see also Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (Fourth Amendment provides the guide for analyzing claims that law enforcement officers used excessive force in the course of an arrest or other seizure). Although movants seek dismissal of the claims grounded on the alleged use of excessive force contending that only the "necessary force" was used during the arrests at issue, *see* Motion, at p. 19, this is an argument better suited for a summary judgment request. For now, suffice to say that the allegations of the complaint are more than enough to allow this claim to go forward.

■ In addition, it also appears from the allegations that the arrested plaintiff, Hernández, claims to have been arrested without probable cause, *i.e.* unreasonably seized. *See* Amended Complaint, p. 4, ¶ 18; p. 7, ¶¶ 34, 35. "The right to be free from unreasonable seizure (and, by extension, unjustified arrest and detention) is clearly established in the jurisprudence of the Fourteenth Amendment (through which the Fourth Amendment constrains state action)." *Camilo–Robles v. Toledo–Davila,* 151 F.3d 1, 6 (1st Cir.1998). Thus, there are surviving claims under the Fourth Amendment.

Movants also aver that plaintiffs failed to state claims under the Eighth and Fifth Amendment. Given that plaintiffs have abandoned their claims under the Eighth Amendment, *see* Partial Judgment (docket entry 73), this issue has now turned MOOT. As to the claims under the Fifth, we already stated above that to the extent the allegations of malicious prosecution were anchored on said Amendment, they were not viable. Similarly, plaintiffs' claims of excessive force and unreasonable seizure implicate the protections afforded by the Fourth Amendment, and not the Fifth. *See Graham,* 490 U.S. at 395, 109 S.Ct. 1865 ("all claims that law enforcement officers have used excessive force . . . in the course of a[ ] . . . 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). There are simply no claims to address under the Fifth Amendment.

■ Defendant Pereira goes a step further and contends that, even if plaintiffs succeeded in stating any claims, as is the case, they failed to establish his supervisory liability because he "was not put on notice that [his co-defendants' behavior] was likely to occur nor would he ever condone, encourage, acquiesce, nor be deliberately indifferent to any violation to citizens' constitutional rights." Motion, p. 22. It is established law that "a supervisor (defined loosely to encompass a wide range of officials who are themselves removed from the perpetration of the rights-violating behavior) may be liable under section 1983 if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another." *Camilo–Robles v. Hoyos,* 151 F.3d 1, 6–7 (1st Cir.1998). Moreover, "supervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior; he 'may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness.'" *Id.* (quoting *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994)). The allegations of the Amended Complaint sufficiently pleaded that Pereira acted "with deliberate indifference

[and] failed to properly sanction or discipline police officers for the violation of the constitutional rights of citizens, thereby causing police, including defendant Sergeant and Officers, to engage in the unlawful conduct described" and was "grossly negligent in the training, supervision and discipline of police sergeants and officers, so that they were deliberately indifferent to and demonstrated a reckless disregard toward the potential violation of constitutional rights which were likely to occur, as indeed occurred through the conduct of Defendant Sergeant and Officers in the present case." Amended Complaint, p. 9, ¶¶ 48–49. These allegations are enough to maintain Pereira as a defendant at this stage. As Pereira's representations go beyond the allegations of the complaint, they constitute appropriate grist for the summary judgment mill.

■ Movants also invoke being entitled to qualified immunity on all the surviving claims, insisting that no constitutional rights have been violated and that it was objectively reasonable for them to believe that their acts did not violate plaintiffs' rights. Motion, at p. 25. The Court of Appeals has established a three-part test when determining if a public official is entitled to qualified immunity: (1) whether plaintiffs' allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue. *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir. 2004). Inasmuch as our inquiry must focus only on the allegations in plaintiffs' complaint, we must conclude—contrary to movants' view—that (1) those allegations establish a constitutional violation, as explained above, (2) that the rights alleged to have been violated under the Fourth Amendment were clearly established at the time of the alleged violation, and that (3) given the facts alleged in the complaint, which describe a warrantless arrest without probable cause and the subsequent use of force which included Torres hitting plaintiff Hernandez, once arrested, "in the head several times" and "instructing his fellow officers to hit everyone," *see* Amended Complaint, pp. 4–5, ¶¶ 20, 23, a reasonable official similarly situated to Pereira and Torres would have known that seizing Hernandez without probable cause and using excessive force against him and the other plaintiffs when effectuating his arrest violated their constitutional rights. Thus, movants are not entitled to qualified immunity at this stage of the proceedings.

Finally, movants advance that all supplemental claims asserted under Puerto Rico law must be dismissed. Their arguments in support of this proposal are two-fold. Obviously hoping that all the federal claims would be dismissed, they insist that dismissal of the local claims would be appropriate given the absence of cognizable federal jurisdiction. They also interpret the Amended Complaint as stating claims for money damages against the Commonwealth, and affirm that, as such, the local claims are barred by the Eleventh Amendment.

Given that federal claims have survived their dismissal motion, the first contention has fizzled. The fallback proposition, in turn, is only partially correct. While it is true that under the Eleventh Amendment we may not entertain plaintiffs' local law claims to the extent they were directed to defendants in their official capacities, there is no such bar to the claims directed to defendants in their individual capacities. Thus, we may properly adjudicate the latter, albeit not the former.

In sum, the Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) filed by defendant

Miguel Pereira (**docket entry 16**) and joined by defendant Reynaldo Torres (**docket entry 47**) is GRANTED IN PART and DENIED IN PART. As explained above, the claims under 42 U.S.C. § 1983 and the claims under Puerto Rico tort law against movants, and all defendants for that matter, in their *official* capacities are ORDERED DISMISSED. The claim for malicious prosecution brought under the Fourth, Fifth and Fourteenth Amendment is also ORDERED DISMISSED. However, the claims brought by Hernández under the Fourth and Fourteenth Amendment for his unreasonable seizure, by all plaintiffs under the Fourth and Fourteenth Amendment for the use of excessive force, and by all plaintiffs under Puerto Rico tort law, against movants in their individual capacities, survive brevis disposition at this time.[3]

SO ORDERED.

### PARTIAL JUDGMENT

For the reasons stated in the Opinion and Order of this same date, partial judgment is hereby entered DISMISSING the claims under 42 U.S.C. § 1983 and the claims under Puerto Rico tort law brought against all defendants in their official capacities, as well as the claim for malicious prosecution brought under the Fourth, Fifth and Fourteenth Amendment of the United States Constitution.

SO ORDERED AND ADJUDGED.

---

**3.** Still pending before the Court is a Motion for Summary Judgment filed by, among others, Pereira and Torres (*see* docket entry 49).